### CHAPPEL *against* AVERY.

Where a testator devised to his wife the use of one third part of his home farm, during her widowhood, and in a subsequent clause, the use of all his estate, both real and personal, until his children (a son and daughter) should become of lawful age; and then devised to his son two thirds of his home farm, and provided, that his son should have the whole of his landed property after the marriage or decease of his mother; it was held, that on the marriage of the mother, before either of the children arrived at full age, her right ceased, and the title of the son became perfect, to the real estate devised.

Where the defendant, in an action of ejectment to recover land devised to the plaintiff, offered parol evidence to shew, that the testator instructed the person who drew the will, so to write it as to give, at all events, a title to the defendant; it was held, that such evidence was inadmissible, as its effect would be to explain, controul or vary a written instrument.

THIS was an action of ejectment, for two pieces of land in *Lebanon*, tried, on the general issue, at *Brooklyn, January* term, 1825, before *Brainard,* J.

The plaintiff claimed title to the land in question, by virtue of the will of his father, *Gilbert Chappel,* deceased; of which the clauses, material in this case, were these: "I do hereby give and allow unto my beloved wife, *Rebecca,* the use and improvement of one third part of my home farm, during her widowhood; also, the use of one third part of the buildings standing thereon." "I do likewise give to my beloved wife the use and improvement of all my estate, both real and personal, until my children become of lawful age." "I give unto my only son, *Charles W. Chappel,* and to his heirs, two thirds of my home farm, and two thirds of the buildings standing thereon, excepting his sister's right in the dwelling-house; also, my twenty-six-acre lot of land. And it is my will, that *Charles W. Chappel* should have the whole of my landed property, after the marriage or decease of his honoured mother." The testator also gave sundry chattels to his son, and a legacy of 1500 dollars, besides sundry chattels to his daughter, *Eliza Ann Chappel.*

The will was duly approved and recorded.   After the death of the testator, and before the commencement of this suit, *Rebecca Chappel* was married to *Jabez Avery*, who was in possession of the land.   *Charles W.* and *Eliza Ann* were the only children and heirs at law of the testator ; and were, at the time of their father's death, and at the commencement of this suit, under the age of twenty-one years.

The defendant offered the testimony of *John Gager*, who wrote the will, to prove, that he was instructed so to write it, as to give to the widow a title to the real estate, at all events, until the children should arrive at full age.   This evidence, on the objection of the plaintiff, was rejected.

On the facts above stated, the judge instructed the jury, in opposition to the claim of the defendant, that the plaintiff was entitled to recover the possession of the demanded premises ; and the jury returned a verdict for the plaintiff accordingly. The defendant moved for a new trial, on the ground that the evidence offered by him, was improperly rejected, and that the jury were misdirected.

*Goddard* and *D. Young*, in support of the motion, contended, 1. That the intent of the testator, apparent from the whole will, and from the nature of the case, was, that the children should live with the mother, and be under her care, and that she should have the use of all the estate, until they should arrive to the age of twenty-one years, whether she should, during that period, be married, or remain a widow.

2. That if the clauses of the will were inconsistent, the evidence offered, by the defendant, ought to have been received, to shew the intent of the testator.

*H. Strong*, contra, insisted, 1. That upon the marriage of *Rebecca Chappel*, her right in the estate ceased, and the plaintiff, who was the special object of the testator's bounty, became entitled to it.   On a different construction, there would be no provision for his support ; the defendant being under no obligation to support his wife's children by a former husband.   Surely, the testator did not intend to give the estate to a *stranger*, to the exclusion of his only son.   It was to guard against such a result, that he declared explicitly, that on the marriage of the mother, the son should have the whole of the landed estate.   If

this be inconsistent with a former clause, the rule is, that in a will the *last* clause is to prevail.

2. That the probate of the will having established this as the true will, no parol evidence can be received to shew a mistake in writing it, or to explain its meaning.

Windham,<br>July,<br>1825.<br><br>Chappel<br>v.<br>Avery.

*Goddard*, in reply, said, the first principle in the construction of a will, is, to give effect, if possible, to every part of it ; and the maxim that the last clause is to prevail, is never to be resorted to, except in the absence of all other means of reconciling conflicting clauses.   He referred to *Dawes* v. *Swan* & al. 4 *Mass. Rep.* 208.   *Duvall* v. *Craig,* 2 *Wheat.* 58.

Bristol, J.  The plaintiff's title to the demanded premises depends on the will of *Gilbert Chappel.*   The defendant married the widow of the testator, and by virtue of the will, claims, that in right of his wife, under the will, he is entitled to the possession of the land in question, till the plaintiff arrives at full age. The plaintiff claims, that the estate of his mother, was terminated, upon her intermarriage with the defendant : and the decision must depend on the intention of the testator, as collected from the different provisions of the will.

By the first clause in the will, the testator gives his wife the use and improvement of one third part of his home farm ; but limits the estate expressly to continue only during her widowhood.   This is inconsistent with the claim set up by the defendant under a subsequent clause, and shews that the husband's bounty was intended not to extend beyond the widowhood of his wife.   His son, the principal object of his bounty, being a minor, he appears to have supposed that he could safely intrust the use of the whole landed estate to his mother, provided she did not marry a second husband, leaving to her discretion the education of her son and the expenditure of the profits of his land.   To carry this wish into effect, he provides, that the mother shall have the use and improvement of the whole land till his children should arrive at full age ; and by the next clause provides, after giving the plaintiff the remaining two thirds of his home farm, that his "son should have the whole of his landed property from and after the marriage or decease of his honoured mother."

By the first clause in the will, we have seen, that the devise of one third of the home farm, was given only during widow-

hood; and the devise of the use and improvement of the whole landed property during the minority of the children, would be inconsistent with the first devise to his wife, if the latter devise was absolute and unconditional. Such a repugnance in two different clauses of a will, placed in immediate connection with each other, is not to be presumed. The different parts of the will are to be constructed with reference to each other, and the intention collected from the whole will. The latter clause, giving the son "the whole landed property after the death or marriage of his honoured mother," is perfectly consistent with the first clause giving to the mother the use of one third of the home farm during her widowhood only. By this clause, a remainder in the third given to the wife during widowhood, is given to the son, as well as all the rest of his landed property, after her marriage or death.

This is not a disposition entirely repugnant to the devise, during the minority of the children; but a qualification or condition subsequent, providing that the estate, during the minority of the children, should cease upon her marriage or death. The intention collected from the whole will is clear; conveyed in language not to be misunderstood; and to disobey it, would be to assume the power of making, not of construing wills.

Besides, if a subsequent provision in a will varies from a preceding one, I conceive the last must prevail, because it is the final determination of the testator; unless, indeed, the intention of the testator, apparent from other parts of the will, leads to a different conclusion. 4 *Mass. Rep.* 215. 1 *Mad. Chan.* 553.

The plaintiff's right, then, to the demanded premises, became perfect upon the intermarriage of his mother.

On the trial, parol evidence was offered to shew, that the testator instructed the person who drew the will, so to write it, as to give a title, in all events, to the widow, during the minority of the children. This evidence was rejected, and the question occurs, whether it should have been admitted.

The general rule, which forbids the admission of parol testimony, to explain, controul or vary written instruments, is applicable to this case; and the evidence was properly refused. If admitted, it would have the effect of passing lands, by parol, to a devisee, which the statute does not permit.

Mistakes in wills, where the mistake is apparent from the will itself, are corrected by a court of chancery. Should the defendant think proper to apply in that quarter, it will then be

time enough to decide, whether this mistake can be corrected, consistently with the principles, by which the courts of equity are governed in like cases.

The motion for a new trial is to be refused.

The other judges were of the same opinion.

New trial not to be granted.