AVERY and wife *against* CHAPPEL and others.

Parol evidence of the intention of the testator is inadmissible to vary the express terms of a will.

Therefore, where a testator, by the terms of his will, gave to his wife the use of his estate during her widowhood, remainder to his son in fee; and, on a bill in chancery, stating, that the testator, in repeated conversations with her and others, at, before and after the making of his will, declared it to be his intention to give her the use of such estate at all events, until his children should arrive at full age,—that he instructed his scrivener to write his will accordingly,—and that the scrivener wrote it otherwise, by mistake,—parol evidence was offered to prove these facts; it was held, that such evidence was inadmissible.

*Qu.* Whether a decree of probate establishing a will, be not, while such decree remains in force, conclusive evidence of the terms of the will.

This was a bill in chancery, stating the following case. On the 10th of *February*, 1820, *Gilbert Chappel* made and published his will, containing the following clauses. "I do hereby give and allow unto my beloved wife, *Rebecca*, the use and improvement of one third part of my home farm, during her widowhood; also, the use of one third part of the buildings standing thereon." "I do also give to my beloved wife the use and improvement of all my estate, both real and personal, until my children become of lawful age, to be improved according to the rules of good husbandry, excepting the interest, which may arise on my notes and mortgages." "I give and bequeath unto my only son *Charles W. Chappel*, and to his heirs, two thirds of my home farm, and two thirds of the buildings standing thereon, excepting his sister's right in the dwelling-house; also, my twenty-six acre lot of land. And it is my will that *Charles W. Chappel* should have the whole of my landed property, after the marriage or decease of his honoured mother." The testator also gave to his son sundry chattels and obligations, and all his money; and to his daughter *Eliza Ann Chappel*, a legacy of 1500 dollars, sundry chattels and a right in his dwelling-house, with every privilege, which might be necessary to her comfort, so long as she should remain single and unmarried. On the 20th of *March*, 1820, *Gilbert Chappel* died. His will was, soon afterwards, proved, approved and recorded.

At the time it was made, the testator owned, and, with his family, lived on, a valuable farm in *Lebanon*, the annual rent of which was of the value of 170 dollars. *Charles W.* and *Eliza Ann* were his only children; the former being three years, and

the latter, seven years of age. For some time before the ma-king of his will, he had been, and then was, in a declining state of health; and during this period, he conversed with his wife on the subject of his will, and expressed to her his wishes, that their children should live with, and be educated by, her; and informed her, that he would make such provision in his will, as would enable her to support and educate them from the avails and rents of the farm, and of other lands, which he owned. At the time when the will was written, and in presence of the person who wrote it, he, in view of his approaching dissolution, expressed to her his hopes and wishes, that she would soon marry again; as the situation of his real estate was such as to require a farmer to superintend it, and assist her in its cultivation; and told her, that the use of the whole of his real estate would be, and, by his will, was, hers, until their children should arrive at full age. This declaration he repeated to her, after the will was written and executed. He also gave directions to the scrivener, who wrote the will, so to write it as to give to his wife the use of all his real estate until the children should arrive at full age, in all events,—whether she should marry again, or not; and the scrivner wrote it, as he did, by mistake—not intentional, but accidental. He afterwards informed the father and friends of his wife, that he had so disposed of his property as that she would enjoy the use of all his real estate for the period above-mentioned.

After the death of the testator, *viz.* on the 16th of *November,* 1820, *Rebecca Chappel,* believing that she was fulfilling the dying injunctions and wishes of her deceased husband, intermarried with *Jabez Avery,* a farmer, and such a man as the testator had pointed out. They occupied the farm, maintaining and educating the children, until the 27th of *January,* 1824, when the guardian of the son brought an action of ejectment, in his name, against the present plaintiffs, for the estate, and, after a trial in the superior court, at *Brooklyn, January* term, 1825, recovered judgment; but on a motion for a new trial, execution was stayed, and the cause is still pending. (*a*)

The bill prayed for an injunction against the proceeding at law, and for a decree quieting the plaintiffs in the possession and use of the real estate devised, until the children should arrive at full age.

(*a*) See *Chappel* v. *Avery,* ante 31.

*New-London,*
*July,*
1826.

Avery
*v.*
Chappel.

*New-London,*
*July,*
*1826.*

*Avery*
*v.*
*Chappel.*

On the hearing, at *New-London, October* term, 1825, before *Bristol,* J. the plaintiffs offered parol evidence to prove the facts stated in their bill; to the introduction of which the defendants objected; but the judge admitted it. The defendants thereupon moved for a new trial, on account of this decision.

*H. Strong,* in support of the motion, contended, 1. That though courts of equity, notwithstanding the statute regulating wills, have admitted extrinsic evidence, in cases of latent ambiguity and of fraud, and to rebut a presumption in equity, and in some cases of a mistaken description of a devisee, or of the fund from which a legacy was to be paid; yet whenever the will can be executed as written, they will not interfere to correct or set aside its provisions, upon extrinsic evidence, (especially when resting merely in parol,) that the testator's intent was different from the effect of the words used in his will. In support of this proposition, he referred to and stated the following cases, in which equity has refused so to interfere. *Hampshire* v. *Peirce,* 2 *Ves.* 216. *Elliot* v. *Elliot,* 2 *Ch. Cas.* 231. *Towers* v. *Moore,* 2 *Vern.* 98. Lord *Falkland* v. *Bertie* & al. 2 *Vern.* 333. *Bertie* & ux. v. Lord *Falkland,* 3 *Ch. Cas.* 129. both the cases last cited being heard together before Lord Chancellor *Somers,* assisted by *Holt,* Ch. J. and *Treby,* Ch. J. *Bennet* v. *Davis,* 2 *P. Wms.* 316. *Brown* v. *Selwin, Rep. temp. Talbot* 240. Lady *Osborne* v. *Villiers, Hil.* 6 *Geo.* 2. cited 2 *Bac. Abr.* 71. (*Gwil.* ed.) *Gale* v. *Crofts, Mich.* 12 *Ann.* cited 2 *Eq. Ca. Abr.* 415. *pl.* 5. *Hunt* v. *Hort,* 3 *Bro. Ch. Rep.* 311. *Mellish* v. *Mellish,* 4 *Ves.* jun. 45. *Philipps* v. *Chamberlain,* 4 *Ves.* jun. 57. *Cambridge* v. *Rous,* 8 *Ves.* jun. 22. *Shergold* v. *Boone,* 13 *Ves.* jun. 376. *Herbert* v. *Reed,* 16 *Ves.* jun. 481. *Andrews* v. *Dobson,* 1 *Cox,* 425. *Doyle* v. *Blake,* 2 *Sch. & Lef.* 240. *Murray* v. *Jones,* 2 *Ves. & Bea.* 318. *Mann* & al. v. Executors of *Mann* & al. 1 *Johns. Ch. Rep.* 231. *Pow. Dev.* 478, 521. 1 *Phill. Evid.* 468, 9. Secondly, though many cases have occurred of a difference between the legal construction of the words of a will and the intent of the testator, courts of equity have not interfered to correct such mistake—*e. g.* under the rule in *Shelley's* case. Thirdly, the law relating to the revocation of wills, confirms the proposition. Fourthly, while only partial and occasional injury will result from refusing relief, on such evidence, in case of wills, great and general inconveniences will result from allowing it.

*New-London,*
July,
1826.

*Avery*
*v.*
Chappel.

2. That in this state, the probate of wills, or the power of determining what instrument contains the will of the deceased, belongs exclusively to courts of probate ; while courts of law and equity have power only to construe and determine the meaning of such wills as the courts of probate have previously established.

*Goddard* and *G. C. Goddard*, contra, contended, 1. That parol evidence was admissible to correct a mistake, as well as to shew fraud, in a deed or written contract. *Chapman* v. *Allen*, *Kir.* 399. *Matson* v. *Parkhurst* & al. 1 *Root* 404. *Cook* v. *Preston*, 2 *Root* 78. *Washburn* v. *Merrills*, 1 *Day* 139. *Peters* v. *Goodrich*, 3 *Conn. Rep.* 146, 150. *Gillespie* & ux. v. *Moon*, 2 *Johns. Ch. Rep.* 585. *Drum* v Lessee of *Simpson*, 6 *Binn.* 478. Admitted in *Graves* & al. v. *The Boston Marine Insurance Company*, 2 *Cranch* 419. 444.

2. That parol evidence is equally admissible to shew the intention of the testator, to correct a mistake in a will. *Gainsborough* v. *Gainsborough*, 2 *Vern.* 517. where the direction given by the testator, to the person who drew the will, was proved, and the will had effect according to such direction. *Thomas* d. *Evans* & al. v. *Thomas*, 6 *Term Rep.* 671. *Masters* v. *Masters*, 1 *P. Wms.* 421. *Harris* v. Bishop of *Lincoln*, 2 *P. Wms.* 135. Duke of *Rutland* & al. v. Duchess of *Rutland* & al. 2 *P. Wms.* 209. *Hodgson* & al. v. *Hodgson* & al. 2 *Vern.* 593. *Pulteney* & ux. v. The Earl of *Darlington* & al. 1 *Bro. Ch. Rep.* 223. *Druce* v. *Denison*, 6 *Ves.* jun 385.

3. That parol evidence is admissible to fortify the natural construction, favourable to the plaintiffs' claim, which arises on the will. 2 *Fonb Eq.* 477, 8. *Sugd.* 111.

DAGGETT, J. The object of the bill is to obtain relief against a judgment of the superior court, rendered in favour of *C. W. Chappel*, one of the defendants, by which he recovered the possession of the real estate of his father *Gilbert Chappel*, lately deceased, under his will, duly proved and approved, by the court of probate. (See 6 *Conn. Rep.* 31.)

The plaintiffs (*Rebecca Chappel* having, since the decease of *Gilbert Chappel*, intermarried with *Jabez Avery*,) proceed on the ground, that the testator *intended* to give, by his will, the land in question, to his wife *Rebecca*, till *Charles*, his son, should arrive at full age, and that he should *then* take it by way of re-

mainder. The court decided, that her interest in it ceased, on her intermarriage with her present husband.

The bill alleges, that before the making of the will, at the time of its execution, and afterwards, in repeated conversations with her, and others, the testator declared such to be his intention; and further, that he instructed the scrivener so to express it, and that, by mistake, the will was so drawn as to give her the estate only during her widowhood.

The proof offered by the plaintiffs, was parol evidence only. Upon these facts, with our statute of wills, and the solemnities required by it, in view, it is certainly difficult to interpose for the relief of the plaintiffs. The court is asked to take from the devisee, the principal object of the testator's bounty, the possession of this estate, for a long period, in opposition to the true construction of the will, by parol proof of the declarations of the deceased, that he intended to give it to his wife : in other words, to *make a will* for him, when he sleeps in his grave. Strong reasons should be urged in support of a claim so novel, and so forbidding. It is not suggested, by the counsel for the plaintiffs, that parol evidence of declarations of the testator, made either *before* or *after* the execution of the will, to explain or vary it, can be received. Such a suggestion would be too bold. It cannot be suported, by a shadow of authority.

It is however urged, that parol evidence ought to be admitted, to correct mistakes in deeds and other writings; and that a court of equity will relieve against such mistakes, as well as against fraud. To prove this position, several authorities are cited. There is no doubt, that a mistake in a deed or contract may be shown, by parol proof; and *that*, either by a party seeking relief against it in his bill or setting it up, by way of defence, to rebut an equity. This is deemed the settled doctrine, in this country and in *England.* Many of the cases are brought together, in a lucid manner, by Chancellor *Kent,* in a case cited by the plaintiffs, *viz. Gillespie* & ux. v *Moon,* 2 *Johns. Ch. Rep.* 585. In *Connecticut,* the cases cited from *Kirby* 400. 1 *Root,* 404. 2 *Root,* 78. 3 *Conn. Rep.* 150. and 1 *Day,* 139. are directly to that point. In the case last cited, *Washburn* v. *Merrills,* the principle was much discussed, and thoroughly established. The court, however, in such cases, will not interfere, except upon the most strong and satisfactory proof.

But the plaintiffs in this bill, are obliged to go much further, to obtain the relief sought. They must show, that the testa-

tor's intention may be proved to be different from what appears <span style="float:right">*New-London,*<br>July,<br>1826.</span> on the face of the will, by parol evidence that he directed the scrivener so to write it that the wife should enjoy the estate till the son should be twenty-one years of age. It is not believed, that any principle or precedent can be found to establish such a doctrine.

<span style="float:right">Avery<br>*v.*<br>Chappel.</span>

The principle of the common law, is, that parol evidence shall not be received to explain, controul or vary a written instrument; and that nothing was intended, at its execution, but what is expressed. *Expressio unius est exclusio alterius.*

In relation to wills, Chancellor *Kent,* in *Mann* & al. v Executors of *Mann* & al. 1 *Johns. Ch. Rep.* 231. 234. examined the subject, with an industry and learning scarcely equalled, except by himself in other cases, and declares the result to be, " That from *Cheney's* case (5 *Co.* 68.) down to this day, it has been a well settled rule, that parol evidence cannot be admitted to supply or contradict, enlarge or vary the words of a will, nor to explain the intention of the testator, except in two specified cases; 1. Where there is a latent ambiguity arising *dehors* the will as to the person or subject meant to be described, and 2. To rebut a resulting trust." The cases referred to, fully support his positions.

If it be said, that the plaintiffs rely chiefly on the allegation of the instruction given to the scrivener and the mistake, it may be asked, if a *will* is to be established, by showing an *intent* to make one? In the present case, has the testator *devised* to his wife the land in question, not during her widowhood, as the *will* proved by the court of probate declares, but till *Charles,* the son, arrived at full age, because a witness testifies, that he so directed the scrivener, though words of a totally different meaning were employed. Then, as Lord *Talbot* observed, (3 *P. Wms.* 354.) "the witnesses, and not the testator, would make the will;" or, as Sir *Matthew Hale* said, (1 *Mod.* 310.) "How can there be any certainty? A will may be any thing, every thing, nothing. The statute appointed the will to be in writing, to make a certainty; and shall we admit collateral averments and proofs, and make it entirely uncertain?" Again, in *Towers* v. *Moore,* 2 *Vern.* 98., it was attempted to have the will explained, by proof of what the testator *declared,* and the *instruction* he gave. The court said, "that devises of land must be in writing, and they would not go against the act of parliament."

In *Purse* v. *Snaplin,* (1 *Atk.* 415.) Lord *Hardwicke* says,

Avery
*v.*
Chappel.

"mistakes are not to be supposed, if any construction that is agreeable to reason can be found out." 2 *F.nb.* 477. "The will that must pass the land, must be in writing, and must be decided by what is contained in it."

It was decided, by the highest court in *South-Carolina,* after much discussion and deliberation, that parol evidence, even of the person who drew the will, and who was of unimpeachable character, when offered to support the allegation of a *mistake* in the will, and to prove, that the testator intended to dispose of the property in a manner not apparent on the face of the will, was not admissible. *Rothmaler* v. *Myers* & al. 4 *Desaus.* 215. Where there is a complete and plain will in writing, it cannot be altered, or influenced, by parol evidence as to the intention. 2 *P. Wms.* 421. Evidence as to matter *dehors* the will, to show the mistake, is insufficient. 2 *Atk.* 373. Even the *instructions for the will, are inadmissible, to show a mistake.* 2 *Ves.* & *Bea.* 318. 1 *Mad. Chan* 81.

The doctrine above stated, is fully confirmed, by cases cited in 3 *Starkie on Evidence* 1010. 1017,—18. 1027., as well as by the opinion of that learned commentator. In a very late decision of the court of *Common Pleas,* in *England,* 4 *Dow,* 65., the same principle is strongly enforced.

I am, then, well satisfied, that the parol evidence offered, ought not to have been admitted; and that the plaintiffs can take nothing by their bill, and would so advise the superior court.

The defendants have also urged, that the jurisdiction of this cause, if relief could be had any where, belongs to the court of probate; that to that court belongs the power of deciding on wills subject to revision in the superior court; and that it would create an *anomaly* in our law, that a will, having been established in a court of probate, should be annulled, or its provisions essentially varied, in the superior court, except by appeal, as the law provides. This objection, as it strikes my mind, is of weight; but I have not examined it, with a view to express an opinion upon it, because a decision upon the other point decides the case.

The other Judges were of the same opinion, except PETERS, J., who did not hear the argument, and therefore gave no opinion.

New trial to be granted.