Case No. 4,659.

FARMERS' BANK v. HOOFF et al.

[4 Cranch, C. C. 323.] [1]

Circuit Court, District of Columbia. May Term, 1833.

Before CRANCH, Chief Judge, and MORSELL, Circuit Judge.

MORSELL, Circuit Judge. The complainants, in this case, seek to have the benefit of a deed from Mary Resler in trust to secure to them the payment of a debt due by her, and on her own account. The property conveyed is a lot of ground, of which her husband died seized, claimed to be held in fee-simple under the will of her husband. Whether she took such an estate, or an estate for life, depends on the true construction of the will, unassisted by any introductory declarations, or by circumstances to be

[1] [Reported by Hon. William Cranch, Chief Judge.]

drawn from the context. Nothing is left us but the words of the devising part of the will. The rule, no doubt, is that the intention of the testator ought to prevail, unless inconsistent with the rules of law; and in case of contending intentions, the one which was most likely to have been the favorite intention of the testator. The objects in the mind of the testator requiring his provision, appearing on the face of the will, were three; the payment of his just debts and funeral expenses; a provision for his wife, and an only child, a daughter.

In most cases, the child is considered the principal object of the father's bounty; the presumptions of law, also, are strong in behalf of the heir. In this case the presumptions both of nature and law, unite in favor of the daughter; and there is nothing to deprive her of the benefit, unless from the whole will, taken together, the testator has plainly and clearly so intended himself to be understood. The words "I give and bequeathe unto my beloved wife Mary Resler, the whole of my estate both real and personal," if they stood alone, I admit, would, by legal construction, carry a fee; but they may be so explained as to show that they were intended either to describe the property only, or so qualified and limited in their extent as to give a less estate or interest. The words "during her widowhood, or in other words, while she bears my name," immediately follow; and if the clause had ended with these words, it would be equally clear, I suppose, that no greater interest than a life estate would have passed. In Co. Litt. 234, Lord Coke says: "This word, (durante,) is properly a word of limitation; as durante viduitate, or durante virginitate, or durante vitâ," &c.; and I believe all the books agree that an estate to a woman during her widowhood is an estate for life only. What effect ought, then, to be given to the subsequent words: "but in case my wife should choose to marry, it is my wish that the whole of my estate, both real and personal, be given to my beloved daughter Eve Resler and her heirs forever"? To say that by taking them in connection they so explain the preceding words as to change their operation from limiting an estate for life, to passing an estate in fee with condition subsequent, would be to change them from the peculiar use to which they are always devoted. We read frequently of words of condition being turned into words of limitation, but never e converso, that I remember. Such a construction would also produce the effect of enlarging the original words of limitation from a life-estate into an inheritance; but this is never done, unless indispensably necessary to support and sustain an estate in remainder, and in favor of him in remainder. 1 P. Wms. 149.

As to the argument, founded on the inference that the limitation over to the daughter could only take place upon the contingency of the widow's marrying again, and not on her death without marrying; and that unless the wife took such a conditional fee, the testator would have died intestate, as to the reversionary interest, which it is not to be supposed he intended to do; if this were not the case of an heir at law, and it were necessary for the purpose of maintaining a different construction, I think there would be authorities to bear me out; and that in cases of similar limitations the law has been settled, that upon the happening of either event, the remainder-man would take in possession.

The first case which will be mentioned is that of Brown v. Cutter, T. Raym. 428. The words of the will were, "I will that my wife shall have and enjoy all my houses, lands, &c., during her natural life, if she does not marry; but if she do marry, then I will that my son Humphrey, presently after his mother's marriage, enter and enjoy the said premises, to him and the heirs male of his body, and for default of such issue to my son Robert and the heirs male of his body," with remainders to his other sons, and so over to a stranger. The wife died without marrying. In that case it was determined that Humphrey, the son, took a vested remainder, to take effect, in possession, on the marriage or death of the wife. Brown, Parl. Cas. 260; I. S. gives all his personal estate to trustees, to pay the interest thereof to his wife, so long as she should continue his widow; but if she married again, then he directed his trustee to pay her an annuity of £110, and no more during her life; and in that case he gave the residue of his estate to his son P.; but made no disposition thereof in the event of his wife's not marrying again. The wife did not marry; and upon a question to whom this residue belonged, the court held that it belonged to the representatives of the son, who had attained the age of twenty-one, and died in his mother's lifetime; or in other words, that there was a vested remainder in the son which might take effect in possession in his representatives upon the marriage or death of his mother. Gordon v. Adolphus, Brown, Parl. Cas. 306, where a man bequeathed his estate to his wife so long as she should remain unmarried; but if she married, then to his daughter; and in case the daughter should die without leaving issue, then to I. S. The daughter died without issue, in the mother's lifetime, who still remained a widow. Held, that the reversionary interest belonged to I. S. after the death of the daughter, although the wife should die without marrying. There is one other case of a devise, in Amb. 209, in which the lord chancellor thus expresses himself: "When an estate is given during widowhood with remainder over, in that case she takes an estate for life determinable on her marrying, and the remainder takes effect on the determination of her estate either by death or marriage." In the present case, it

is given during widowhood with remainder over on her marrying again within a limited time, that is, in the lifetime of his daughter, and is by way of forfeiture; so that if it were necessary, for effecting the intention of the testator, I should be sustained, I think, in the position, that the remainder might take effect in possession, on the death of the mother. But I do not think it of importance, as the true question is, when did the estate of the wife end? The testator might have reflected that he had but one child, she an heir at law. That she would inherit it, whether he gave it to her, or not, expressly; that a limitation over to her, of such an interest, ·being nothing more than the law would have cast upon her, would have been void. It is no uncommon case, when a father intends to let his children have his property equally, to leave it to legal distribution, as it respects them. As to the wife, it is sometimes desirable to give her something more than her thirds, to which the law limits her, and to provide for it, of course, by will, as in this case. Those words in the latter part of the clause in the will first alluded to, are important to show in what event, even sooner than the death of the widow, the reversionary interest might take effect in possession, in the daughter; and as important to show in what sense the words, "the whole of my estate both real and personal," are to be taken.

Let it be observed, then, that the testator. in the gift to his daughter, uses the very same words, with the superadded words of inheritance, "to my beloved daughter Eve Resler and her heirs forever." It would appear, therefore, that when he intended to give an estate of inheritance, he understood .the technical language by which it might be done, and used it, not choosing to use words of doubtful construction. This, I think, would be the plain, common-sense inference from such a circumstance; and I think it also sanctioned by legal adjudication; for which purpose I refer to Chester v. Painter. 2 P. Wms. 336. "One devises one third of all his estate whatsoever to his wife, and two thirds of all his real and personal estate to his son I. S. and his heirs;" the wife has but an estate for life in the third part of the real estate; the word "estate" being intended to describe the thing only; and when the testator intends to pass a fee, he adds the word "heirs" to the word "estate." S. P. Id. 335. I am aware of Lord Chancellor Talbot's decision in the case of Ibbetson v. Beckwith, Cas. t. Talb. 161. In that case the word "estate" had been repeatedly used, in the former part of the will, in connection with words which plainly and clearly showed an intention to pass an estate of inheritance. The chancellor's words are, "The clause whereby the estates are devised over to his mother and her heirs, in case Thomas should refuse to take his name. hath been argued as proof of his intending him but an estate for life; but

that depends upon the construction of the word 'estate'; which will be clear from the sense he hath taken it in through all the other parts of his will, where, whensoever he hath used it, he has meant thereby to pass the inheritance. It hath been said, indeed, that in those clauses the fee doth not pass from the force of the words, but from the nature of the purposes, namely, that of paying debts, &c.; but still the words are an argument that he intended to pass the inheritance, though not the whole argument." I do not think it necessary to recite the whole of the chancellor's argument. The case can be referred to, if necessary to see it at large. There is, however, one other part that I will notice. When summing up his reasons, the chancellor said, "Another objection has been made, that if he intended him an estate of inheritance, he would have given it him in the same words as he has limited it over, upon his default of taking his name; but this wording is so incorrect that I think no stress can be laid upon it. What weighs with me is the intent plainly appearing to pass the inheritance, as is manifest from the other clauses of the will." It requires no very critical comparison of the two cases to discover the substantial differences in them; and that the rule as laid down in the case in P. Williams, is still good law, and may be applied to influence and govern this case.

If the testator had intended to give the whole of his estate in fee to his wife, believing that she would give it to the daughter in the event of her death, he would have expressed some such wish. It can hardly be supposed that when, by the mother's death, she might be deprived of any aid from her and left in the most need of his assistance,. he should not even intimate a wish that she should be provided for. I think, therefore,. that the prevailing intention of the testator, and the true construction of the will is, that. his wife should have his property, real and personal, for her comfort and support during her life, if she remained unmarried; but if she preferred marrying, it would be probable she would not so much need his bounty. Also, in that event, it would not be desirable that his property should be under the control, directly or indirectly, (even during her life,) of such an after-taken husband; in such an event, therefore, the estate should immediately cease. By such construction, his will would liberally provide for his wife; and the only child and heir at law would not become disinherited, but take the reversionary interest; the testator would be made to look to two events, on the happening of either of which, the estate would become his. child's; the one presently, if the widow thought proper to marry; the other more remotely, upon her death.

CRANCH, Chief Judge. The estate given to the wife by the will of Jacob Resler is

"during her widowhood, or, in other words, while she bears my name;" but in case she should choose to marry again, then it was his wish that the whole of his estate, both real and personal, should be given to his daughter, "and her heirs forever." The estate is expressly, during her widowhood; and at the termination of that estate, it is as expressly given to his daughter in fee. According to the literal construction of the will, the devise to the daughter was to take effect only upon the marriage of the widow; an event which might never happen; and if that strict construction could be given to the will, the remainder to the daughter would be contingent. But would such a construction be consistent with the intention of the testator? There is no reason to suppose that he intended to die intestate as to any part of his estate, which would be the case upon such a strict construction, if the widow should never marry again; unless the devise had been in such words as could be construed to carry the fee to the wife. But the testator has used as precise words of limitation, as could be used, to show that he intended to give her only an estate during widowhood; and it is a much less strained construction of the will to suppose that he intended to give the fee-simple to his daughter after the termination of the estate during widowhood, than that, (contrary to the express words of limitation,) he intended to give a fee-simple to his wife determinable upon her second marriage. It is evident that he knew the use of precise words of limitation. He has expressly, and by the most apt words, limited the quantity of estate given to his wife and to his daughter; that is, an estate during widowhood to the wife, with remainder in fee to the daughter.

The only question is, whether the remainder was contingent or vested. We think it was intended to be a vested remainder, to come into possession at the termination of the estate of the wife. The words, "but if my wife shall choose to marry, it is my wish that the whole of my estate, both real and personal, be given to my beloved daughter Eve Resler and her heirs forever," might have been used ex abundanti cautela, to show the intention more explicitly, that the daughter should come into possession of the whole estate, personal as well as real, upon the second marriage of the widow. Upon the question of construction we have been referred to Butler's edition of Fearne on Contingent Remainders, p. 241, c. 1, §§ 10, 4, and the cases there cited. Also to the following cases: Brown v. Cutter, T. Raym. 428; Gordon v. Adolphus, 3 Brown, Parl. Cas. 306; Chester v. Painter, 2 P. Wms. 336; Ibbetson v. Beckwith, Cas. t. Talb. 157; Bamfield v. Popham, 1 P. Wms. 55; Idle v. Cook, Id. 78; Tomlinson v. Dighton, Id. 154; Sheffield v. Lord Orrery, 3 Atk. 282, and the cases cited by Preston in his book on the Quantity of Estates. And upon the whole, we are of opinion that the widow took only an estate during widowhood; and that the daughter took a vested remainder in fee. Bill dismissed with costs.