## KENNARD v. KENNARD.

A copy of a will executed and proved according to the laws of another state may be filed here with a copy of its probate, and will then have the same effect in the disposition of property both real and personal situated in this state as though it had been executed and proved according to the laws of this state.

The testimony of a lawyer of another state is admissible to prove the laws of that state.

It is the present right of future enjoyment whenever the possession becomes vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, which distinguishes a vested from a contingent remainder.

The interpretation of a will is the ascertainment of the testator's intention.

*Hale* v. *Nute*, 38 N. H. 422, and *Hayes* v. *Tabor*, 41 N. H. 521, criticised and qualified.

APPEAL from a decree of the judge of probate for the filing and recording of a copy of the will of Manning Kennard, deceased, and of the probate of the same in Pennsylvania, upon the application of Virginia Kennard, widow and legatee under said will. Facts found by the court. Manning Kennard resided at Florence, Italy, at the time of his death in December, 1873. He left a will whereby he gave all his property, real and personal, to his wife, the appellee, to hold for her own use forever. The will was executed in Florence, and was attested by but two subscribing witnesses.

To show the interest of the appellee under the will of Manning Kennard, a copy of the will of James Kennard was admitted in evidence, subject to exception. The will of James Kennard is as follows: "I James Kennard of Portsmouth in the county of Rockingham * * * do make, publish and declare this my last will and testament in manner and form following: First, I give and bequeath to my executors hereinafter named, to be held by them in trust for the following purpose all my Rockingham Bank stock, consisting of 226 shares, two hundred and twenty-five shares of which stand in the name of Manning Kennard of Philadelphia, the remaining one share in my own name. I also give and bequeath to my executors to be held by them in trust for the following purpose, all my land in Austin street together with my dwelling-house No. 9 thereon, with all the furniture therein, which is not to be separated from the house except by consent of all parties interested, all the dividends or interest that may accrue on the 226 shares of Rockingham Bank stock, after paying the taxes thereon to be paid over to my beloved wife Frances B. Kennard, during her natural life or widowhood, the house, furniture and land above named to be also for her only use and benefit, she paying the taxes thereon during her life, or while she remains my widow. At her decease or marriage the whole of the Rockingham Bank stock, house, furniture and land before named is to revert to my heirs as follows:

"To my son Manning Kennard, fifty shares Rockingham Bank stock. * * *

"The house, furniture and land before named, together with all the rest and residue of my estate, personal, real or mixed, to be equally divided between my four children or their heirs."

The appellants contend that Manning Kennard took nothing under the will of James Kennard, because Frances B. Kennard survived him. Other exceptions are shown by the opinion of the court.

*James W. Emery* and *Wm. H. Rollins*, for the appellants.  Vir-

ginia Kennard can be interested in the estate of James Kennard only through the will of Manning Kennard, as she cannot take as heir to her husband. *Richardson* v. *Martin*, 55 N. H. 45. M. Kennard died before the death of the widow of his father, and therefore took nothing under his father's will. No estate, whether personal or real, vested in him during the life of the widow of J. Kennard. When a legacy is to take effect at a future time, or the time is annexed to the legacy itself, and not the payment of it, the legacy is contingent, and lapses by the death of the legatee before the time. *Snow* v. *Snow*, 49 Me. 159. It is well settled, that when the words of the bequest, which look to the future, apply to the substance of the gift, the vesting is suspended; but if it apply to the time of payment, the legacy vests at once upon the death of the testator. In determining how this is, there is often great difficulty in ascertaining the will of the testator; but it appears to be an established rule of construction, that if the bequest be of a sum of money to the legatee, at the age of twenty-one years, etc., then the interest is contingent. *Brown* v. *Brown*, 44 N. H. 283. In this case a large number of cases are cited as establishing this rule of construction.

If the words payable, or to be paid, are omitted, and the legacy is given at twenty-one, or if when, in case, or provided the legatee attains twenty-one, or any other definite future period, this confers on the legatee a contingent interest which depends, for its vesting and its transmissibility to his representatives, on his being alive at the period specified. 1 Jarm. Wills 760, and note, where a large number of authorities are cited. Thus, the word at, or its equivalent, determines the time when the legacy is to take effect, and applies to the substance of the gift.

The language in the will of J. Kennard is explicit: the property is given to trustees for his widow during her natural life or widowhood. At her decease, or marriage, the property is to revert to his heirs. Thus, the time when the legacy was to take effect, and the property be distributed, was fixed by the marriage or death of Mrs. J. Kennard, and nothing could vest in M. Kennard until that event happened. *Hill* v. *Rockingham Bank*, 45 N. H. 270.

The naming of M. Kennard by J. Kennard as one of his heirs shows only that he expected his son would survive his widow. If he had not been under such an impression, he would not have named Manning at all in his will. M. Kennard had no children. It cannot be supposed that J. Kennard would have given any of his property to any one not a member of his family, nor in any way related to him except as the wife of his childless son. The naming, therefore, of M. Kennard by J. Kennard does not add any force to the expression, as it was not intended that the property should go to any one who was not his heir at the death of his widow.

There is another reason why the devise by J. Kennard to M. Kennard must be held to be a contingent remainder, so far as it

21*

relates to the real estate. When an estate is limited to A for life, remainder to B after the death of A, the remainder is contingent. *Robertson* v. *Wilson*, 38 N. H. 51. If land is devised to A for life, remainder to B for life after the death of A, remainder to the heirs of B after the death of B, the remainder to B is during the life of A contingent. No estate of inheritance vests in B during the life of A, therefore B's quit-claim deed of the land made in the life of A does not convey any title to the land. *Hall* v. *Nute*, 38 N. H. 424.

In both of these cases the point upon which they were decided is precisely the same as that raised in the case under consideration. In *Hayes* v. *Tabor*, 41 N. H. 521, the court say,—"It will be observed that the remainders in this devise are not to take effect or commence upon the termination of the life estate upon which they are dependent, but only upon the termination of the life of the person having the life estate." And, consequently, it was determined that the remainders were contingent and not vested. According to the express provisions of the will of J. Kennard, the remainder to M. Kennard was not to take effect upon the termination of the life estate of the widow, but at her marriage or death; consequently the remainder to M. Kennard was contingent, and no title was vested in him which he could, during the lifetime of the widow, transfer or convey by deed or will.

*Frink & Batchelder* (with whom was *Lincoln L. Eyre*, of Pennsylvania), for the appellee. The questions arising under the will of James Kennard are properly before the court, for if Manning Kennard takes nothing under his father's will, there is no property in this state for his (Manning Kennard's) will, if filed, to operate upon.

The contention of the appellants is, that the estate given to Manning Kennard in his father's will was contingent and not vested, and hence not transmissible by will. We reply (1) that it was a vested remainder; and (2) even if it was a contingent remainder it was transmissible by will, and upon its vesting passed to the appellee.

To the position that the estate was a vested remainder, the following authorities were cited and commented on: Fearne Rem. (4th Am. ed.) 215, 216; Hayes Lim. Est. Tail, 162; 2 Jarm. Wills (5th ed.) 414; 2 Washb. R. P. (4th ed.) 541; *Doe* v. *Considine*, 6 Wall. 474, 476; 1 Pres. Est. 70; 2 Flint. R. P. 259; *Pearce* v. *Savage*, 45 Me. 101; *Linton* v. *Laycock*, 33 Ohio St. 128; *Roome* v. *Phillips*, 24 N. Y. 463; *Hancock* v. *Titus*, 39 Miss. 224.

Even if there was a contingency, such as forfeiture, surrender, merger, etc., it would, at most, make the remainder to Manning Kennard a vested one, subject to be divested upon the happening of this contingency. *Tayloe* v. *Mosher*, 29 Md. 443. A remainder after A's death to B and C or their heirs vests in B and C. "Or their heirs" are words of limitation and not of substitution. *McGill's Appeal*, 61 Penn. St. 46; *Mull* v. *Mull*, 81 Penn. St. 393; *King* v.

*King*, 1 W. & S. 205; Hawkins Wills 180; *Read* v. *Snell*, 2 Atk. 646; *Sloan* v. *Hanse*, 2 Rawle 28; *Brasher* v. *Marsh*, 15 Ohio St. 112. *Patterson* v. *Hawthorn*, 12 Serg. & Rawle 112, is entirely in point. There the bequest was to the testator's wife for life: " at the decease of my wife I do allow the price of my land shall be equally divided among my two sons, A and B, and my daughters, C, D, E, and F, or their heirs, in six equal parts." F was alive at the time of the testator's death, but died during her mother's lifetime. The court held that the legacy was vested in her, and that her administrator was entitled to the same. *Buckley* v. *Reed*, 3 Harris 83; *McGill's Appeal*, 11 P. F. Smith 46; *Provenchere's Appeal*, 17 P. F. Smith 463; 4 Kent Com. 202; *Loring* v. *Coolidge*, 99 Mass. 191; *Hill* v. *Bacon*, 106 Mass. 578; *Gourley* v. *Woodbury*, 42 Vt. 395.

The only countenance the appellant has for the position that it is a contingent remainder is derived from the two cases in our state to which he refers,—*Hall* v. *Nute*, 38 N. H. 422, and *Hayes* v. *Tabor*, 41 N. H. 521. But these cases, so far as they intimate a general principle as to remainders, conflict with every case that has been decided within the last fifty years in England or in this country. They seek to lay down a principle which is criticised severely by all the text-books, and stands upon no foundation of precedent whatever. See 2 Washb. R. P., *c.* 4, *s.* 1, *n.*; 2 Sharswood Lead. Cas. R. P. 282.

A remainder is not to be considered as contingent where it may be construed consistently with the intention to be vested. *Dingley* v. *Dingley*, 5 Mass. 535; 2 Red. Wills 627; *Felton* v. *Sawyer*, 41 N. H. 202; *Dennett* v. *Dennett*, 43 N. H. 499; *Linton* v. *Laycock*, 33 Ohio St. 129; *Tayloe* v. *Mosher*, 29 Md. 443; *Fairfax* v. *Brown*, 60 Md. 50; *Danforth* v. *Talbot*, 7 B. Mon. 623; *Hancock* v. *Titus*, 39 Miss. 224; *Roome* v. *Phillips*, 24 N. Y. 463; *Harris* v. *Alderson*, 4 Sneed 250; *Rogers* v. *Rogers*, 11 R. I. 38; and numerous other cases cited in 2 Sharswood Lead. Cas. R. P. 293.

But, even if the rule in *Hall* v. *Nute* had any precedent in the law, as it certainly has had no following save *Hayes* v. *Tabor*, it has no application to this case. The estate for life, or until the marriage of Mrs. Kennard, was a trust estate. The legal seizin was in the trustees. A trust estate being the precedent estate cannot fail by forfeiture, or surrender, or merger.

In point of fact, no forfeiture, merger, or surrender ever occurred, but the life estate remained in the widow of James Kennard until her death; and there being no question as to who the remainder-man is, the remainder, even though contingent, could be transmitted by will. *Roe* v. *Griffiths*, 1 Wm. Bl. 605; *Roe* v. *Jones*, 1 H. Bl. 30; *Jones* v. *Roe*, 3 D. & E. 88; Fearne Con. Rem. 371; *Leeming* v. *Sherratt*, 2 Hare 14, 23.

ALLEN, J. Several reasons of appeal from the decree of the

probate court, allowing a copy of Manning Kennard's will, with a copy of the probate by the orphans' court of Philadelphia, to be filed, are assigned.

The first reason, that of want of domicile of the testator in Philadelphia, being found against the appellants, cannot prevail.

The second reason is, that the will was not executed according to the laws of New Hampshire, in that the execution of the will was in the presence of only two witnesses, who subscribed their names to the attestation. The provisions of the statute, permitting the copy of a will with its probate made in another state to be filed, do not require the execution of the will to be according to the laws of this state, but only according to the laws of the state where probate of the original will has been made. G. L., *c.* 194, *s.* 12. The will was executed and proved according to the laws of Pennsylvania, where the domicile of the testator was. The testimony of two witnesses, experienced lawyers of Philadelphia, was competent to prove what the law of that place was upon the subject of executing and proving wills (*Pickard* v. *Bailey*, 26 N. H. 152, 169, 170, 171, and cases cited), and their testimony accords with the published statutes and judicial decisions of that state. Laws of Penn., 1833, *p.* 249, *s.* 6; Purd. Dig. 1872, *p.* 1474, *s.* 6. The existence or nonexistence of a foreign law is a question of fact, and the law of Pennsylvania having been found upon competent evidence to be as claimed by the plaintiff, that finding is conclusive.

Another reason of appeal is, that no duly authenticated copy of the will and probate was presented at the probate court here. The evidence was, that the record of which a copy is produced is the only record kept of the probate of wills in Pennsylvania. The papers produced were a copy of the will, the affidavits of witnesses to the genuineness of the signatures of the testator and witnesses to the will, and the certificate of the register of wills to its due allowance in the orphans' court. These were duly attested by the register, and the seal of the court was attached, with the certificate of the presiding judge to the official character of the attesting officer, and that his attestation was in due form. The copies were copies of the only record kept, and were authenticated according to law. U. S. Rev. St., *s.* 905.

The remaining reason of appeal is, that the copies are filed with a view of transmitting title to real estate in New Hampshire, and the will not being executed according to the laws of this state cannot have that effect. The law in general is, that real estate is transmitted according to the law of the state or country where it is situated. Until 1868, to enable one interested in a will to produce and file a copy, with a copy of its allowance in court, and make it effective to operate upon property situated here, the will must have been executed according to the laws of New Hampshire. Rev. Sts., *c.* 157, *s.* 13; C. S., *c.* 166, *s.* 13; Gen. Sts., *c.* 175, *s.* 13. In that year (Laws of 1868, *c.* 1, *s.* 50) it was enacted that a copy of any

will executed out of the state and allowed in a court with probate powers in any other state or country according to the laws thereof, on the application of any person interested, may, with a copy of the probate, be decreed to be filed in the probate office of any county where there is property upon which the will may operate, and the decree shall have the same effect as if the will were executed according to the formalities required by the laws of this state. G. L., *c.* 194, *s.* 13. Under that statute, if the applicant, Virginia Kennard, had any interest in the will of Manning Kennard, a copy of it duly proved in Pennsylvania, the state of his domicile, was properly decreed to be filed ; and that being done, it operates to transmit real estate situated in Rockingham county as effectively as if it had been executed in the presence of three witnesses, according to the requirements of the New Hampshire statute of wills.

The defendants, who take this appeal, claim that Virginia Kennard, the plaintiff, has no interest in the will of her husband, Manning Kennard. By the terms of that will, the testator gave all his property, real and personal, to the plaintiff. If there was any property upon which the will would operate in New Hampshire, it came to Manning Kennard through the will of his father, James Kennard, and is situated in Rockingham county.

James Kennard, by his will, gave his property, consisting of bank stock, furniture, and a house and land in Portsmouth, to his executors, to be held by them in trust for the use and benefit of his wife, Frances B. Kennard, during her natural life or widowhood, and at her decease or remarriage to revert to his heirs,—fifty shares of bank stock, and an equal fourth part of the furniture, house and land, and other property, being designated as the share of his son, Manning Kennard. James Kennard died in 1856, and his widow never remarried. She enjoyed the use and income of all the property named in her husband's will until her death in 1882. She survived Manning Kennard, who died in 1873. It is claimed by the defendants that the interest in the share of his father's estate designated for him never vested, and he having died before the life estate of Frances B. Kennard terminated, nothing of that share was transmitted by his will.

The bequest of the personal estate by limitation over, after the use for life by Frances B. Kennard, is supported in the nature of an executory devise *(Ladd* v. *Harvey,* 21 N. H. 514), and, as a bequest to Manning Kennard to come into enjoyment at a future day, vested immediately upon the death of the testator. *Brown* v. *Brown,* 44 N. H. 281. The fifty shares of bank stock, and a fourth part of the furniture and other personal property, if any, passes by the will of Manning Kennard to the plaintiff as his sole legatee.

In the devise of the real estate, the limitation over, by way of remainder to Manning Kennard and others, created a vested remainder, if Manning Kennard, then living, had an immediate right

to the possession of the estate designated to him upon the ceasing of the prior estate. The prior estate would terminate, at all events, upon the death of the life tenant, an event certain to happen ; and the time for coming to the enjoyment of the estate being fixed by an event certain, the right of enjoyment, by a person then in being, immediately upon the occurrence of the event and the termination of the prior estate, was established. It was not necessary to vesting the remainder, that Manning Kennard should survive the first taker. It is the present right of future enjoyment whenever the possession becomes vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. When the event on which the preceding estate is limited must happen, and when also it may happen before the expiration of the estate limited in remainder, the remainder is vested. 4 Kent 202, 203 ; 2 Wash. R. P. 228 ; Jarm. Wills, *c.* 25, *s.* 1, and cases cited. The provision that the life estate should terminate on the marriage of the life tenant did not prevent the remainder from vesting. For, as that estate would terminate at all events with the death of Frances B. Kennard, the uncertain contingency of her marriage prior to that time, if at all, could not change the character of the remainder from a vested to a contingent one; for in any event the ulterior estate would come in on the death of the life tenant, and, by the terms of the devise, the same person would take the estate on the marriage of the life tenant. 2 Jarm. Wills 414, 415 ; 2 Red. Wills 596, 597 ; *Farmers Bank* v. *Hooff*, 4 Cranch 323 ; *Chappel* v. *Avery*, 6 Conn. 31 ; *Ferson* v. *Dodge*, 23 Pick. 287 ; *Biddle's Appeal*, 69 Penn. St. 190.

In the construction of the devise, the rule of interpretation is the ascertainment of the testator's intention. *Rice* v. *Society*, 56 N. H. 191, 197, 198, 203 ; *Brown* v. *Bartlett*, 58 N. H. 511 ; *Wilkins* v. *Ordway*, 59 N. H. 378; *Kimball* v. *Lancaster*, 60 N. H. 264 ; *Sanborn* v. *Sanborn*, 61 N. H ——. That intention is gathered not only from the words of the devise, but as well from the language of the whole will, from the relations of the testator to the persons who are the objects of his bounty, and from surrounding circumstances. The old and arbitrary method, of always giving to certain words and phrases a technical and fixed meaning despite the intention of the testator *(Holmes* v. *Cradock*, 3 Ves. 317), and of always making the application of artificial rules the test of construction *(Scott* v. *Chamberlayne*, 3 Ves. 302, *Martin* v. *Holgate*, 1 L. R. H. L. 175), has often led to gross injustice and the breaking of wills, and does not now prevail. The more liberal and natural rule, and one which makes the ascertainment of the testator's intention the paramount test of accuracy in interpretation, is now more generally applied. *Pearsall* v. *Simpson*, 15 Ves. 29 ; *Leake* v. *Robinson*, 2 Mer. 363, 386 ; *Leeming* v. *Sherratt*, 2 Hare 14 ; *Thompson* v. *Thompson*, 28 Barb. 432; *Wright* v. *Miller*,

8 N. Y. 9; *Roome* v. *Phillips*, 24 N. Y. 463; *Letchworth's Appeal*, 30 Penn. St. 175; *Chess's Appeal*, 87 Penn. St. 362; *Dingley* v. *Dingley*, 5 Mass. 537; *Furness* v. *Fox*, 1 Cush. 134; *Eldridge* v. *Eldridge*, 9 Cush. 516; *Fay* v. *Sylvester*, 2 Gray 171; *Barton* v. *Bigelow*, 4 Gray 353; *Childs* v. *Russell*, 11 Met. 16; *Throop* v. *Williams*, 5 Conn. 98; *Cooper* v. *Hepburn*, 15 Gratt. 551; *Thompson's Lessee*, 6 Ohio St. 480; *Sinton* v. *Boyd*, 19 Ohio St. 30; *Braman* v. *Hill*, 31 Md. 181; *Saylor* v. *Plaine*, 31 Md. 158; *Clark* v. *Tennison*, 33 Md. 85; 1 Red. Wills 423; 2 *id.* 619; 1 Jarm. Wills 758. *n.*; 2 *id.* 436; 2 Wash. R. P. 227; 2 Cruise Dig. 203.

In doubtful cases a construction is favored that gives a vested rather than a contingent interest, and except the contrary appears in clear and unmistakable terms, it will be presumed that the testator intended to dispose of his whole estate by the will. It is plain, from the terms of his will, that James Kennard never intended or contemplated leaving a part of his estate to lapse by reason of a doubtful contingency, or for want of more express words indicating that the remainder created by the devise should vest at once on the death of the testator. The intention is as manifest that Manning Kennard should enjoy the estate designated for him after the termination of the widow's prior estate, as that the widow should enjoy the use and income of the estate given to trustees for her benefit during life or widowhood. It is as if James Kennard had given the whole estate to Manning and his other children, subject to the widow's enjoyment of the use for life, or so long as she might remain unmarried. Looking at the terms of the devise and the intention of the testator as gathered therefrom, the only conclusion that can be reached is, that the devise to Manning Kennard in remainder, after the satisfaction of the prior interest of Frances B. Kennard, is a vested remainder, and the estate so devised is transmitted by Manning Kennard's will.

The case of *Hall* v. *Nute*, 38 N. H. 422, followed by *Hayes* v. *Tabor*, 41 N. H. 521, is cited as authority against the view here expressed. To the extent that these cases substitute an arbitrary and fixed rule of interpretation for one which makes the ascertainment of the testator's intention the guide in construction, they are overruled. Upon the rule of testamentary interpretation established in this state, it is immaterial whether the doctrine of remainders is correctly or incorrectly applied in *Hall* v. *Nute* and *Hayes* v. *Tabor*. Whatever that doctrine may be and however it may be applied, it does not set aside the supreme rule that the interpretation of a will is the ascertainment of the testator's intention. If it upholds the intention disclosed by the terms of the will in this case, it is useless; if it does not uphold it, it is equally useless, as it cannot break the will.

*Decree affirmed.*

CLARK, J., did not sit: the others concurred.