WELLS AND WIFE vs. BEALL, Adm'r of BRASHEARS.—*June,*
1830.

A devise to "A, and the heirs of his body, lawfully begotten," since the act
of 1786, constitutes an estate in fee simple. A remainder, limited to take
effect upon the determination of such an estate, is inoperative.

Rents and profits are recoverable in equity from those who take possession of
a minor's real estate.

It is not necessary, under the Act of 1825, ch. 117, to file exceptions to the
Auditor's report, to take advantage of objections in the Appellate Court,
which the pleadings in the cause put in issue, and which do not depend
upon the state of the accounts, though an account may be ultimately ne-
cessary to ascertain the extent of the claim.

APPEAL from the Court of Chancery.

In this case, a bill was filed on the 10th December, 1825,
by the appellee, *Otho B. Beall,* as administrator of *Richard
B. Brashears,* against the appellants, *William Wells* of
*George,* and *Jemima,* his wife, and *William Wells,* execu-
tor of *Jacob W. Brashears.* It stated, that in the year
1797, a certain *John W. Brashears,* of *Prince George's*
county, died, leaving five children, to wit : *Jacob W., Rich-
ard W., Beall, Hester,* and *Jemima Brashears,* having first
duly executed his last will and testament, a copy of which
is filed, and exhibited with the bill. This will was proved
June 17th, 1797. By it, he devised to his son, *Ja-
cob W.,* and the heirs of his body, lawfully begotten, his
dwelling plantation, called *Ledgworth,* remainder to his
sons *Richard W.* and *Beall Brashears,* and the heirs of
their bodies, to be equally divided, with a reservation to his
two daughters, of an equal right with the first devisee,
*Jacob W.,* until their death, or day of marriage. There
was also a similar devise to *Jacob W.,* of 44 acres, part of
a tract called *Plummer's Pleasure,* with the like remainder,
to *Richard W. and Beall.* The residue of the tract called
*Plummer's Pleasure,* the testator devised equally to *Rich-
ard W.* and *Beall,* in fee tail general, with cross remainders·
in tail, to the survivor, and *Jacob W. Brashears.* The

testator then bequeaths a negro to each of his said three sons, specifically; directs that his tobacco then on hand shall be disposed of by them, for the purpose of paying his debts; divides among them equally, the residue of his real and personal estate, and names them as his executors. The bill further states, that *Beall Brashears* died in the year 1801, without issue, and without changing the estate created in him by the aforesaid will. That *Richard W. Brashears* died in 1806, intestate, leaving a widow, and an infant son, *Richard B. Brashears,* (complainant's intestate.) That *Hester* died without issue in 1802, and that *Jacob* died in  January, 1816, without issue, and without in any way altering the estate, which he took under the will of *John W. Brashears.*   That in 1816, *Jemima Brashears* intermarried with *William Wells, of George.* The bill charges, that from the death of *Richard W. Brashears,* (the father of the complainant's intestate,) to the death of *Jacob;* the said *Jacob* held possession of, and received and retained to his own use, the proceeds of the whole of said lands, and that since his death, the same have been exclusively held, occupied, and enjoyed by the appellants, *William Wells of George,* and *Jemima* his wife. That no part of said rents had been paid the complainant's intestate, in his life time, or to his administrator since, but the whole amount is now due.   That on the 4th of July, 1824, the complainant's intestate departed this life, a minor, and that administration on his estate has been duly granted complainant by the proper authority.   *Prayer,* that *William Wells,* the executor of *Jacob W. Brashears,* may be decreed to account with, and pay complainant, those portions of the profits of said lands, which accrued to his intestate, during the life-time of the said *Jacob;* and that *William Wells, of George,* and *Jemima* his wife, may be compelled to account for those which have become due since; and for general relief.

The *answer* of *Wells and wife,* admits that *John W. B.* died about the period stated in the bill, having made his last

will and testament, of which the complainant's exhibit is a true copy, and they refer to the same, for the purpose of ascertaining the true nature of the interests, and legal rights, which his children and devisees derived thereunder. The answer also admits that the testator left five children, as set forth in the bill, and that the particulars in relation to their several deaths, &c. are correctly stated; and it further admits, that complainant's intestate is the only son of *Richard W.*, one of the sons of *John W. B.*, and that he died an infant on the 4th July, 1824. The marriage of the appellants in 1816, is also admitted, and it is admitted that from the death of *Richard W. B.* in 1806, to the death of *Jacob* in 1816, all the lands mentioned in the will of *John W.* were held and enjoyed by *Jacob*, and that since the death of the latter, they have been held by these defendants. The answer then avers, that *Jacob W. B.* by a duly executed will, (a copy of which is exhibited and made a part of the answer,) devised the whole of his estate, to the defendant *Jemima*, and the heirs of her body, and they therefore allege, that they are lawfully in possession of all the estate and property which the said *Jacob* might legally dispose of, without responsibility to any one for the rents and profits thereof. They deny the title of *John W. B.* to the tract called *Plummer's Pleasure*, which they say was purchased, and paid for, by *Jacob*, out of his own funds, after the death of the former. They admit that *John*, in his life, together with one *Basil Beall*, made a contract for the purchase of said tract, but insist that no part of the purchase money was paid by him, and therefore they positively deny any accountability for the rents, &c. of *Plummer's Pleasure*. With respect to any interest which the complainant's intestate may be supposed to have acquired in *Ledgworth*, upon the death of *Jacob*, they are not unwilling to pay a reasonable sum when the extent of that interest shall be ascertained. The answer further states, that no administration was had on the estate of *John W. B.* and therefore they cannot speak confidently of the value of his personal

estate. They charge, however, as matter of belief, that the three slaves, of whom one was bequeathed to each of his three sons, *Jacob, Richard* and *Beall,* constituted the most valuable portion, and that consequently he could not have left assets sufficient to pay his debts, and the purchase money of *Plummer's Pleasure.* The three slaves were divided among the legatees, according to his will, and as *Richard* and *Beall,* thereby elected to take their legacies, rather than apply them to the extinguishment of the debt created for the land, they cannot now be heard to say that *Jacob* acted in his own wrong, in paying for the same out of his own funds, and taking the deed to himself. The statute of limitations was also insisted on as a defence.

The answer of *William Wells,* the executor of *Jacob W. B.* sets up, as a defence to the relief prayed against him, that he had fully and fairly administered the estate of his testator, and paid over the surplus to *William Wells, of G.* and *Jemima* his wife, agreeably to his said testator's will, long before he had any notice of the present claim. Upon proof of this, the bill was dismissed as to him with costs, without any opposition on the part of the complainant's solicitor.

A commission by consent then issued to take testimony, and the case was referred to the auditor to state an account of the rents and profits of the lands in the proceedings mentioned, from the depositions to be returned with the commission. Among other proof, the complainants offered a deed from *William* and *Benjamin Beall* to *Jacob W. B.* bearing date May 4th, 1802, which recited that *Basil Beall* and *John W. B.* had obtained a deed for *Plummer's Pleasure,* bearing date on the 31st of May, 1784, which deed being supposed to be defective, the parties, grantors therein, had conveyed the said land by a deed, dated March 18th, 1802, to the said *William* and *Benjamin Beall,* devisees of the aforesaid *Basil,* and it having been agreed between *Basil* and *John W. B.* that the said *John W. B.* should have 144 acres of said land, the said *William* and *Benjamin,* as de-

visees of *Basil Beall*, in consideration of said agreement, and of the sum of £315 16s. 4, paid them by the said *Jacob W. B.* conveyed to the said *Jacob*, devisee of the said *John W. B.* the said 144 acres, part of *Plummer's Pleasure.* The complainant also proved, that *Jacob W. B.* had been heard to say, after the death of *Richard W. B.*, that he held fifty acres of land to which *Richard* was entitled.

On the part of the defendants it was proved, that *John W. B.* in his life-time had acknowledged that he paid no part of the purchase money of the land purchased by him jointly with *Basil Beall*, and that the latter had paid the whole; and they proved that after the death of the said *John W.* the purchase money was paid by *Jacob W. B.* who took the deed to himself with the knowledge and consent of *Richard.*

There was a good deal of proof taken on both sides, in relation to the annual value of the lands, and number of acres, from which the auditor, in pursuance of the order of reference to him, stated several accounts.

Exceptions were filed to these accounts, upon the ground that the auditor had estimated the annual value too high, and had assumed that the lands contained a greater number of acres than was warranted by the proof.

BLAND, Chancellor, (Dec'r. Term, 1827.)

From the pleadings and proofs it appears, that early in the year 1784, the late *John W. B.* and the late *Basil Beall*, obtained a joint deed, by which the legal title in a tract of land called *Plummer's Pleasure*, was conveyed to them. That *B.* was then in possession of the part of that tract, held and claimed by him, containing 144 acres, and also of another tract called *Ledgworth*, containing 126 acres, and that he died so seized thereof, some short time previous to the 17th June, 1797, leaving five children, *Jacob W.*, *Richard W.*, *Beall*, *Hester* and *Jemima.* The late *John W. B.* by his will, devised the whole of *Ledgworth*, together with 44 acres of *Plummer's Pleasure*, to his son *Jacob W.*

in tail, reserving an equal usufructuary right with his son, to his two daughters, *Hester* and *Jemima*, in *Ledgworth*, until their death or marriage; and on *Jacob's* dying without issue, the testator gave the 44 acres to his two sons, *Richard W.* and *Beall*, in tail, to whom he devised the remaining part of *Plummer's Pleasure*, in tail, with cross remainders to the survivor, and *Jacob*, in tail, in case of the death of either without issue. After which these devisees took and held under this will, and without any thing having been done by either of them to bar their respective estates tail. *Beall Brashears* died in the year 1801, without issue, and *Hester B.* died in the year following, also without issue, or having been married. Then *Richard W. B.* married *Mary*, and had issue, a son, *Richard B. B.* and died in the year 1806. After the death of *John W. B.* and prior to the month of May, 1802, *Jacob W.* took possession of that part of *Plummer's Pleasure*, which had been devised to him by his father, and after the death of his brother *Richard W.* he took possession of the whole of it; claiming it as his own, under a deed of the 4th May, 1802, in which it is recited, that he was " the devisee of the aforesaid *John;*" alleging that he had in fact purchased, and paid for it; after which, in the month of January, 1816, *Jacob* died without issue, having previously by his will devised all his estate, real and personal, to his sister *Jemima*, the now defendant, who afterwards took possession of the whole of *Ledgworth*, and of *Plummer's Pleasure*, of which the late *Jacob* had been in possession; and in 1816 she married the now defendant *William Wells, of G.* and they have ever since held, and do now hold possession thereof. *Richard B. B.* died an infant, on the 4th of July, 1824, without issue, and the complainant, as his administrator, on the 10th of December, 1825, filed this bill, for an account of rents and profits of so much of these lands as he was entitled to, during his life.

It clearly follows from this state of facts, that on the death of *Beall B.* his brother *Richard W. B.* became en-

titled, as tenant in tail, to three fourths of so much of *Plummer's Pleasure* as had been so devised to them, which on his death, subject to his widow's dower, descended to his son *Richard B. B.* as tenant in tail, from which time his claim to rents and profits, arising out of so much of that tract as was withheld from him, commenced.   Under the will of *John W. B., Jacob, Hester,* and *Jemima* were usufructuary tenants, in common of *Ledgworth, Jacob* for the one half, and his two sisters, the other ; and on the death of *Hester, Jacob* became entitled to take three fourths, and *Jemima* one fourth of the rents and profits of it.   After the death of *Jacob,* without issue, *Ledgworth,* thus encumbered with *Jemima's* usufructuary interest, and the 44 acres of *Plummer's Pleasure,* together with the one fourth of a part of that tract, which he took as tenant in tail on the death of *Beall,* reverted to the heirs of the donor, who were *Richard B. B.* the intestate of the complainant, and *Jemima,* one of the defendants; consequently, upon the death of *Jacob,* the late *Richard B. B.* claim commenced for the rents and profits, arising out of his share of the lands which had thus descended to him, as one of the heirs of his grand-father, and which were withheld from him by the defendants, *Wells* and wife.   These claims, as relates to *Ledgworth,* are not contested, but as to *Plummer's Pleasure,* they are opposed by the defendants, *Wells* and wife, on the ground that the late *John W. B.* had, in fact, no more than a mere equitable interest in that tract of land.   That after his death, *Jacob* paid for it, and obtained a conveyance of the legal title to himself, and that too, with the knowledge of those under whom the complainant claims, and after they had actually received their distributive shares of the personal estate of the late *John,* which they ought to have applied, or have suffered to be applied, in satisfaction of the purchase money then due for this tract of land.   But the deed under which *Jacob* claims, recites, that the legal estate in the tract called *Plummer's Pleasure,* had been previously conveyed to his father, the late *John W. B.* and *Basil Beall;* and it also

appears, that the late *John W. B.* and his son *Richard W. B.* had held undisturbed possession of this tract of land for upwards of twenty years, which of itself constitutes sufficient evidence of a legal title against every one. But in addition to all this, it appears that *Jacob W. B.* distinctly, and solemnly by his acts, elected to take and hold this land under the will, and as the devisee of his father, the late *John W. B.;* thus virtually recognizing a complete legal estate to have been in him, and consequently, neither *Jacob,* nor any one claiming under him, can now be permitted to question or invalidate the legality of the title of the testator *John W. B.,* in any manner whatever. 1 *Swans.* 394, 425, 433. But *Jacob W. B.* by his meddling and officious payment of the purchase money, as is alleged, surely cannot be allowed thus to form for himself, and those who claim under him, any ground of equity, whereon, in any way, to resist the claim of the complainant. *Prin. Eq.* 134. As to the statute of limitations which has been relied on as a bar, by *Wells* and wife, the infancy of the complainant's testator is a sufficient answer to that.

It appearing by the proceedings, and having been admitted in the argument, that *William Wells,* the executor of the late *Jacob W. B.* had accounted for the whole of the testator's personal estate which came to his hands, and that he had paid or delivered over the surplus, to the defendants, *Wells* and wife, no relief is asked against him. But the other defendants, *Wells* and wife, will be held accountable for the rents and profits of so much of *Plummer's Pleasure,* as the complainants' intestate was entitled to, which accrued and were received by *Jacob* in his life-time, in respect of the assets, which they derived from him. Whereupon, it is on this 29th December, 1827, adjudged, ordered, and decreed, &c.

From this decree, *Wells and wife* appealed to this Court.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, STEPHEN and ARCHER, J.

*Key* and *Johnson* for the appellants, contended :

1. That *John W. B.* did not leave personal assets suffi-cient to pay his debts, including the purchase money for *Plummer's Pleasure.*

2. If he did, *Richard W.* and *Beall Brashears* were equally responsible for its application with *Jacob,* they be-ing co-executors of the will of *John W.*

3. That as *Richard W. B.* was one of the residuary le-gatees of *John W.* and received his proportion of the per-sonal estate, he cannot complain that it was not applied to pay the debt for *Plummer's Pleasure.*

4. That as regards the tract called *Ledgworth,* and 44 acres of *Plummer's Pleasure, Jacob W. B.* had in those lands, an estate in fee tail general, under the will of *John W. B.* which estate having been created since the act of 1786, ch. 45, the appellants (the devisees of said *Jacob,*) hold it free from any claim by *Richard W. B.* and those claiming under him.

5. That conceding *Richard W.* the father of the appel-lee's intestate, to have had any interest in the tract called *Plummer's Pleasure,* yet that as regards the forty-four acres of said tract, as also three-fourths of the one-half of the residue of said tract devised to *Beall Brashears,* by *John W. B.,* the said *Richard W. B.* had no interest in the same, and of course, the decree of the Chancellor in de-creeing against the appellants, rents and profits for such portions, is erroneous.

On the fourth point they referred to the case of *Newton vs. Griffith,* 1 *Harr. and Gill,* 111, and insisted, that this objection to an allowance for the rents and profits of those parcels of land might be made, although there was no ex-ception to the report of the auditor, on the ground of want of title in the complainant. The act of 1825, ch. 117, does not preclude the appellant's right to make any question raised by the pleadings; and the answer in this case, by re-ferring to the wills for the rights of the parties, presents the question of what are those rights.

*Magruder*, for the appellee.

It appears from the exceptions to the report of the auditor, that there is no controversy in relation to the proportion of the residue of *Plummer's Pleasure*, to which complainants intestate was entitled. The dispute is respecting the annual value.

In regard to *Ledgworth*, the answer does not deny that complainant is entitled to something; it admits an interest, but the extent of that interest is questioned. The case was referred to the auditor to make a report, subject to exceptions, and as the exceptions only go to the valuation, the report, in other respects, must be considered as admitted to be correct.

ARCHER, J. delivered the opinion of the Court.

There is nothing in the peculiar exceptions filed to the auditor's report, which prevents this Court from examining the rights of the parties, in relation to the rents and profits of any of the lands mentioned in the bill. The answer denies the right to rents and profits, and it could not be necessary to frame the exceptions in such a manner, as would deny rights, which are put in issue by the pleadings.

The case of *Newton vs. Griffith,* 1 *Harr. and Gill,* 111, is conclusive to show, that although an estate tail was devised in *Ledgworth,* and 44 acres of *Plummer's Pleasure,* to *Jacob W. Brashears,* yet that he virtually took an estate in fee ; and by the case of *Purnell's Lessee vs. Rider,* decided on the Eastern shore, the remainder limited to take effect after the determination of the estate tail is inoperative. The same doctrines settle the question, as to the estate which *Richard W. Brashears* and *Beall Brashears,* took under the will of *John W. Brashears.* They were tenants in common, in fee, of the residue of *Plummer's Pleasure,* not devised to *Jacob W. Brashears.* Upon the death of *Beall Brashears,* his moiety of *Plummer's Pleasure* descended to *Jacob W. B., Richard B., Hester B.,* and *Jemima B.*

We perceive nothing in the facts disclosed which ought to prevent the rents and profits from being decreed to the complainant below, according to his interests in the lands.

During the period which elapsed from the death of *Richard W. Brashears,* till the death of *Jacob W. Brashears,* the complainants intestate was entitled to one half the profits of the residue of *Plummer's Pleasure,* which was not devised by the will of *John W. Brashears* to *Jacob,* and in addition to this, was entitled, as the representative of his father *Richard,* in consequence of the death of *Beall Brashears,* to one sixth of the profits of said residue; for at the death of *Beall Brashears,* his right in a moiety of the residue descended, to *Jacob, Richard,* and *Jemima Brashears; Hester Brashears* having died in 1802, before the right of the complainants intestate accrued.

By the will of *Jacob W. Brashears,* all his interest in the lands was devised to *Jemima,* one of the appellants; consequently, after the death of *Jacob,* the interest of the appellee's intestate remained the same as it was before his death.

The decree of the Chancellor is reversed, with costs to the appellants in this Court, and this Court will direct the auditor of the Court of Chancery to audit the account, according to the principles of this decree, and will direct the costs of the audit to be taxed as the costs in this Court.

**DECREE REVERSED.**