WILLIAM LAWES, and CHARITY, his wife, *vs.*
ROBERT G. LUMPKIN and wife.

A court of equity has jurisdiction to entertain a bill for partition, filed by an adult heir against the widow and infant heirs, and to decree that the widow account with the complainant, for his proportion of the rents received by her.

In such a case it is error to issue a commission to three free-holders, under the Act of 1818, ch. 133, as that Act relates only to proceedings, where all the parties are infants.

It is also error, in such a case, to refer the proceedings to the auditor, and ratify his report, in which an *absolute sum* is allowed the complainant, not upon his interest in the *proceeds* of sale, but upon a mere *valuation* of the property *before* sale.

An interlocutory decree, in such a case, requiring the widow to pay to the complainant the amount so stated in the auditor's report, by a given day, is a proceeding not warranted by, and wholly foreign to, the object of the bill for partition.

A final decree, directing the property to be sold for the purpose of compelling compliance with such interlocutory order, in disregard of the widow's right of dower, she having protested against the sale, is also erroneous.

Conveyance of a *leasehold* interest to *husband and wife*, and a subsequent conveyance of the *reversion* to the husband *alone*, for the purpose of *extinguishing* the ground-rent reserved by the lease, and, to the intent that the husband may hold the property in fee; HELD :

That in the absence of proof to sustain a separate estate in the wife, in the leasehold interest, to be upheld under the Acts of Assembly relating to the conjugal rights of married woman, the husband had the right to extinguish such interest, and it was extinguished and merged by the conveyance of the reversion to him.

APPEAL from the Equity side of the Superior Court of Baltimore City.

This bill, filed October 28th, 1857, by the appellees against the appellants, alleges that Edward Ferry died, seized *in fee* of a lot and premises on Lombard street, conveyed to him by deed from Gelston and wife; that he left a widow, Charity, since intermarried with Wm. Lawes, and as heirs at law, Susannah, the wife of Lumpkin, and two infant children; that the property is not susceptible of partition, and it will be for

the interest and advantage of the infants and complainants, to sell it for distribution; that the widow has been living in the dwelling house since her husband's death without rent, and has rented and received the rent for another house on the premises, and prays for a decree for a sale and division of the proceeds amongst the parties entitled, and that the widow and her present husband may account for the rents received, and pay a reasonable sum for the rent of the house occupied by them.

The answer of Lawes and wife, admits the property is not susceptible of division, but denies that it is capable of sale at this time, or that it is for the interest of any of the parties, save the complainants, that it should be sold, and they aver, that its sale now would work great injury to the other parties interested. They further insist, that Ferry and *his wife*, for considerations issuing from *both*, purchased, and had conveyed to them, *as tenants in common*, by deed of assignment from Sewell and Gelston, a leasehold estate in said property for ninety-nine years, renewable forever, and that it was the understanding between them, that each should hold his and her undivided moiety, and that the deed was drawn with that understanding, and that it was the intention of Ferry to buy out the *reversion* in the same manner, but by some inadvertence, the deed therefor was made to him alone; and the said Charity claims, 1st, one-half of the leasehold interest in her own right as her own purchase; 2nd, one-third of Ferry's moiety of the leasehold interest; and 3rd, dower in the fee, and insists that the property cannot be sold, except as to the fee, without her joining, which she is unwilling to do. They say they have always been willing to account to the heirs for their proportion of the rent, and pray for a decree refusing a sale as prayed, but empowering the respondents to pay complainants the value of their share of the property, to be appraised by impartial appraisers to be named by the parties, and thus extinguish the complainants' title thereto.

The deed for the leasehold interest, dated July 9th, 1847,

from Sewell and Gelston, conveys the same to "Edward Ferry, and Charity Ferry, their executors, administrators and assigns," in consideration of $700 paid by *them.* It recites that Sewell had previously executed a mortgage of the premises to Gelston, for $225, but had paid the same, and that the ground rent reserved in the original lease from Gelston to Sewell, is $40. The receipt for the purchase money, states it was received *"from Edward Ferry, and Charity Ferry his wife."* The deed from Gelston and wife, dated June 4th, 1851, conveys the *reversion* to Edward Ferry, his heirs and assigns, in consideration of $666 paid by *him,* and states that it was executed to extinguish the ground rent of $40, reserved in the lease, which Ferry was desirous of extinguishing, and to the intent that the said rent "may *cease and determine,* and the said lot, with the appurtenances, be henceforth held by the said Edward Ferry, his heirs and assigns, in *fee-simple."*

After answer of the infants, by guardian, and replication, the court (LEE, J.) ordered a commission to *three* disinterested free-holders, to value the property and ascertain whether its sale would be for the interest and advantage of the infants and of the parties. These commissioners made their report, in which they value the property at $3500, in *fee-simple,* and state that its sale would be for the advantage of the infants and other parties, and give their reasons for this opinion, and that it would also be for the advantage of the widow that the property should be sold, and she receive her dower interest out of the proceeds. A commission was issued, by consent, under which testimony, as to value of the rent of the premises, was taken and returned. The court then passed an order directing the interests of the complainants to be determined upon a valuation of the property, and then paid by the defendants, and that the papers be referred to the auditor, who shall ascertain by competent witnesses the precise value of the property, and the rents received and due by the defendants to the complainants, and report the same with the amount to which the complainants will be entitled. The auditor took testimony, re-

ported the value of the property, and ascertained the interest of the complainants therein, and their share of the rents at $1131.47. He also reported, that the interest of Charity Ferry and Edward Ferry, in the term, was extinguished by the conveyance of the reversion to *him*, and that he held the property in fee after the execution of the deed for the reversion. He also ascertained the value of the dower according to the chancery rule in cases of partition, at $433.33. An order was then passed by the court overruling the defendants' exceptions to the auditor's report, and ratifying and confirming the same, and further ordering and decreeing that the defendants, Lawes and wife, pay to the complainants the sum of $1131.47, being the amount allowed them by the auditor, on or before a day limited, and if not so paid, then that a decree shall forthwith pass, ordering a sale of the property at public auction, by a trustee to be appointed by the court, and out of the proceeds, the amount so allowed the complainants, to be paid them by the trustee. After the time limited, (the money not being paid,) the court passed a final decree, ordering the property to be sold for the purpose of complying with said order, and for the purpose of partition between the parties, appointing a trustee to make the sale, and directing him to convey to the purchaser the title to the property, "clear and discharged from all claim of the parties hereto complainants and defendants, and those claiming by, from or under them, or either of them," and to bring the proceeds into court, to be distributed under the court's direction.

To all these orders, decrees and proceedings, the defendants, Lawes and wife, objected by protest and exceptions taken at each step, and after the passage of the final decree, appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Wm. J. Waterman* and *Wm. Price*, for the appellants.

1st. All the proceedings of the court below in this case —the

43     v.18

Lawes & Wife, *vs.* Lumpkin & Wife.

issuing of a commission to three freeholders under the Act of 1813, ch. 133, which applies to cases only where all the parties are infants, the unauthorised reference to the auditor and his erroneous report, which allows the appellees an absolute sum upon a mere valuation of the property before sale, the order ratifying the same, the preliminary decree directing payment of this sum by a given day, and the final decree for an absolute sale of the property, unencumbered by the widow's dower, when she had refused to consent to such sale, and to take her dower from the proceeds, are totally irregular, erroneous and unwarranted by any practice in equity, or any law or statute of Maryland relating to descents.

2nd. As to the widow's interest in the leasehold estate. The doctrine of merger does not apply: The proceedings being in equity, that court will never allow the merger to operate except for special reasons, and never where the interest of third parties would be prejudiced. The two estates or interests will not coalesce by merger, but will be kept apart, when there is an intervening incumbrance or estate; which may be used by the court to subserve the purposes of justice. In this case there was a conveyance of the term to Edward Ferry and Charity Ferry, and an assignment of a mortgage to them, at the same time, for Gelston united in the assignment for that purpose only. This mortgage was never satisfied by Ferry in his lifetime, and survived to Charity Ferry, and the court will now give her the benefit of it to prevent the merger. On this point, see 2 *Bl. Comm.*, 777; *Preston on Merger*, 212; 4 *Kent*, 101, 102; 1 *Roper on Property*, 209, 212; *Macqueen on Husband & Wife*, 52; *Clancy on Husband & Wife*, 110; 2 *Cruise's Digest*, 467; 1 *Peere. Wms.*, 41, *Philips vs. Philips*; 3 *Brown's Ch. Rep.*, (*Perkin's Ed.*,) 298, notes to the case of *Heygate vs. Annesley*; 11 *Eng. Law & Eq. Rep.*, 317, *Davis vs. Barrett*; 3 *Johns. Ch. Rep.*, 53, *Gardner vs. Astor*; 6 *Johns. Ch. Rep.*, 393, *Starr vs. Ellis*; 15 *Barb.*, 9, *Reed vs. Latson*; 15 *Barb.*, 70, *Clift vs. White*; 5 *Watts*, 456, *Dougherty vs. Jack*; 8 *Watts*, 148, *Moore vs. Harris-*

*burg Bank;* 1 *Watts & Sergt.*, 485, *Richards vs. Ayres;* 6 *Conn.*, 390, *Lockwood vs. Sturdevant;* 34 *Maine,* 50, *Simonton vs. Gray.*

*John L. Thomas,* for the appellees.

1st. The Acts of Assembly allow the right of partition by sale where it would be for the advantage of the parties. By the Act of 1785, ch. 72, sec. 12, the court can order a sale of lands in which infants are interested, by its appearing it would be for their interest, and the Act of 1831, ch. 311, extends this power to a sale of *lease-hold* interests. A court of equity in cases of partition, acts *ex equo et bono,* according to its own notions of general equity and justice between the parties, and the orders and decrees in this case were made in such a spirit and with such a view. 1 *Md. Rep.*, 398, *Young vs. Frost.*

2nd. The deed for the reversion was made, as it states, to the *intent,* that the ground-rent may *cease and determine,* and that Ferry and his heirs and assigns, might thenceforth hold the property *in fee,* and for the *purpose* of *extinguishing* the ground-rent reserved in the *lease* assigned to Ferry and wife. At law the conveyance of the reversion to the husband alone, merges the term held by husband and wife, or belonging to the wife alone. 3 *Preston on Conveyances,* 294 to 309. 4 *Kent,* 100. 15 *Barb.*, 70, *Clift vs. White.* 2 *Eden's Rep.*, 162, *Donisthorpe vs. Porter.* And in equity merger will take place where it is the clear intention of the party. 4 *Kent,* 101. Ferry must be presumed to have intended the legal consequence of his act, and it was for his wife and widow to show such was not the case. If the assignment to him and his wife be considered a settlement on her of one-half the leasehold, he had still power to dispose of his wife's personal interest, and that he did intend to dispose of the same and did exercise his marital rights, is manifest from the deed of the reversion to him, and his dealings with the property thereafter and before his death. 2 *Story's Eq.*, sec. 1383. 3 *Ves.*, 166, *Brown vs. Clark.* But the assignment to him and his wife, did not give her a

separate estate for her sole use. It no where says so on the face of the assignment, and there is no evidence outside of the deeds on the subject, and clear and explicit evidence to abandon his marital rights must be made to appear. 2 *Md. Ch. Dec.*, 353, *George vs. Spencer.* 6 *Md. Rep.*, 375, *Turton vs. Turton.*

GOLDSBOROUGH, J., delivered the opinion of this court.

Though the Superior court had jurisdiction to entertain the bill filed in this case, in pursuance of the Act of 1785, ch. 72, sec. 12, and also to decree that the appellants, Lawes and wife, account with the appellees for their just proportion of the rents, (see 2 *G. & J.*, 458,) yet there is manifest error in issuing a commission, as was done in this case, to three freeholders, under the Act of 1818, ch. 133, that Act, relating to proceedings, only, where all the parties are infants.

Again, the court erred in referring the proceedings to the auditor, and ratifying his report, in which an *absolute sum* is allowed to the appellees, not upon their interest in the proceeds of sale, but upon a mere valuation of the property before sale.

The interlocutory decree, requiring the appellants, Lawes and wife, to pay to the appellees the amount stated in the auditor's report, by a given day, is a proceeding not warranted by, and wholly foreign to, the objects of the bill.

The final decree, not only to sell the property "for the purpose of compelling a compliance with the order of the court, passed on the fourth of April," but also in disregard of the widow's right of dower, against the sale of which she had protested, is equally objectionable.

The question, as to the widow's leasehold interest, independent of her right of dower, having been made and argued by the appellants' counsel, we deem it proper to say, that we find no sufficient evidence in the cause to uphold the idea, that Edward Ferry and his wife became tenants in common of the leasehold interest, under the assignment from Sewell and Gel-

Birney *vs.* New York and Washington Telegraph Company.

ston, on the contrary, by the deed from Gelston and wife, by which the reversion was conveyed to Edward Ferry in fee, it is expressly provided, that it is "to the intent that the rent heretofore reserved and made payable thereout, by virtue of the lease aforesaid, *may cease and determine*, and the said lot and appurtenances be held henceforth by said Edward Ferry, his heirs and assigns, in fee-simple;"—also, "that it was made for the *purpose of extinguishing* the ground-rent reserved in the lease to Ferry and wife." In the absence of proof to sustain a separate estate in Charity Ferry, to be upheld under the Acts of Assembly relating to the conjugal rights of married women, the marital right of the husband to extinguish the leasehold interest is unquestionable.

For the reasons above stated, the decree of the court below must be reversed, with costs, in this court, to the appellants, and the cause remanded for further proceedings.

*Decree reversed and cause remanded.*

(Decided June 4th, 1862.)