JOHN T. CLARK and MARY A. CLARK, his Wife, Executrix of W. H. TENNISON, deceased, *vs.* FRANCIS J. N. TENNISON, by his next friend, WARFIELD T. BROWNING.

JOHN T. CLARK *vs.* FRANCIS J. N. TENNISON, by his next friend, &c.

JOHN T. CLARK *vs.* FRANCIS J. N. TENNISON, by his guardian, &c.

## *Merger — Construction of a Will.*

T intermarried with H. At the time of the marriage, the wife was possessed, of a term of years renewable forever, in a city lot. After the marriage, the husband purchased the reversion to the same lot. In the deed conveying the reversion there was no expression of a purpose to extinguish the term. T afterwards died, his wife surviving him. HELD:

1st. That the interest of the wife in the property was not extinguished by *merger*, but survived to her on the death of the husband.

2d. That such *merger* would be against the spirit and intention of the Act of 1853, ch. 245.

The will of a husband after devising to his wife absolutely all of his slaves, proceeded as follows: "Item. I likewise give and devise to my said wife all the rest of my estate so long as she remains my widow; at her death to be equally divided with my children, and to them and their heirs forever." The widow afterwards married. HELD:

1st. That the limitation of the property to the widow during widowhood, was valid and effective.

2d. That at the marriage of the widow the estate devolved on the children, it being the intention of the testator that the widow should have the property only during her widowhood.

3d. That the intention of the testator being manifest, there is no intestacy, because the will did not expressly provide what was to become of the property during the intermediate time between the marriage and death of the widow.

APPEALS from the Orphans' Court of Baltimore City.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY and ALVEY, J.

*E. G. Kilbourn* and *Levin Gale,* for the appellant.

No *merger* took place by reason of the purchase of the husband of the reversion in his wife's leasehold estate—and there is nothing to show that anything from said property came to the hands of the guardian. *Act of* 1853, *chap.* 245; *Code, Art.* 45; *Schindel vs. Schindel,* 12 *Md.,* 121 *and* 312; *Lawes vs. Lumpkin,* 18 *Md.,* 334; *Pool vs. Morris,* 29 *Georgia,* 374; *Goode vs. Longmire,* 35 *Ala.,* 668; *Stall vs. Fulton,* 1 *Vroom,* (*N. J.,*) 430; *Jones vs. Davies,* 5 *Hurl. & Nor.,* 766 *and* 7 *Hurl. & Nor.,* 507; 1 *Coke Litt., p.* 328, *sec.* 636; *Gage vs. Acton,* 1 *Salkeld,* 326; *Cro. Eliz.,* 712; *Preston on Merger,* 276, 277, 309.

---
Clark, *et al. vs.* Tennison, *et al.*

---

The will of Wm. H. Tennison did not operate to pass any interest in the residue of his estate between the marriage of his widow and her death, and therefore as to such property he died intestate, and the estate must be distributed without regard to the will.

*R. J. Brent* and *M. A. Mullin,* for the appellee.

The testator gave his wife, in as express terms as possible, an estate during widowhood only. His intention was clearly to deprive her of all benefit after her marriage. But he has, by inadvertence, failed to limit his estate over, after her marriage, but has limited it to his children at her death. It is, therefore, clear that the children were the primary objects, after giving her the preceding estate.

The rule is to favor the primary objects by construction to aid their claim. Hence, in favor of the primary objects, the Court will supply words, limiting the contingency of their dying without issue living at the time of the death, so as to make the contingency occur during the time of a precedent estate. *Barker vs. Cocks,* 6 *Beav.,* 82; *Galland vs. Leonard,* 1 *Swanst.,* 161; *Edwards vs. Edwards,* 15 *Beav.,* 360.

Words will be supplied where necessary to carry out the apparent intent, and here words must be supplied so as to make the limitation over take effect " at her death or marriage." 1 *Jarman on Wills,* 427, *a and notes, and* 431.

A limitation during widowhood is valid even if there be no limitation over. *Morley vs. Rennoldson,* 2 *Hare,* 579.

This last case very clearly distinguishes between a limitation and a condition, and shows that " if the gift is until marriage and no longer, there is nothing to carry the gift beyond the .marriage." See also 10 *English Law and Equity,* 143; *Commonwealth vs. Stauffer,* 10 *Barr,* 350.

At common law, a husband acquired the right to all the personal property of his wife, including her chattels real, and with them he could do what he pleased; he might sell, assign

or mortgage the same without his wife's consent. 2 *Kent,* 134, 135.

Tennison, in fact, reduced this property into possession. He made it his residence and purchased the reversion. Thus the leasehold and the fee uniting in the same person, although the one *jure mariti,* the other by purchase, there was a *merger* and Tennison became seized in fee, of the entire property. 4 *Kent,* 101, 102; *Coke upon Litt.,* 556, (*H.*) 54, (*b.*) 338, *b; 3 Preston on Conveyancing,* 43–49, 294, 295, 306, 307–309; 6 *Cruise's Digest,* 480, (*Greenl. Ed.,* 570); 2 *Sug. on Vendors,* 230.

These common law rights of the husband were not taken away by Statute till the adoption of the Code, long after all the rights in this case became vested. *Michael vs. Baker,* 12 *Md.,* 158; *Schindel vs. Schindel,* 12 *Md.,* 294, 313; *Bridges vs. McKenna,* 14 *Md.,* 268.

BARTOL, C. J., delivered the opinion of the Court.

These appeals have been argued together, and may be disposed of in one opinion.

The appeals of John T. Clark are:

1. From an order passed on the 17th day of April, 1869, removing him from the guardianship and appointing another guardian in his place.

2. From an order of the 20th day of September, 1869, rejecting the second guardian account exhibited by him, and sustaining the exceptions thereto.

3. The appeal of Clark and wife is from an order of the 17th day of April, 1869, rejecting the third administration account of Mary Ann Clark as executrix.

In the argument of the cases in this Court the appeal from the order removing the appellant Clark from his guardianship was abandoned, that order will therefore be affirmed.

The principal questions presented by the other appeals are:

1st. The question of *Merger.*

2d. The construction of William H. Tennison's will.

The question of *merger* arises in this way :

On the 31st day of July, 1853, the testator, William H. Tennison, intermarried with Mary Ann Hoshall, who, at the time of the marriage, owned and possessed a house and lot on Charles Street in the City of Baltimore, for a term of ninety-nine years renewable, subject to a ground rent of $45 per annum. Afterwards, on the 8th day of April, 1854, William H. Tennison purchased the reversion in the property, and during the coverture he and his wife occupied the same.

It is contended on the part of the appellee, that the effect of the purchase of the reversion by Tennison was to merge or extinguish the term, and to vest in him the whole fee simple. *Merger* is where two different estates in the same land exist in the same person at the same time, and the less estate is merged into the greater ; as a term of years into the freehold, because the two estates cannot coëxist in the same person.

On this head of the law a good deal of subtlety and refinement may be found in the decisions—and the rules laid down by the Courts, and by eminent text writers, have not always been consistent. The truth of this observation will appear by reference to the treatise of *Mr. Preston on Conveyancing*, in the 42d vol. of the Law Library, especially to chapter XII, beginning at page 273 m., and the cases there cited. An examination of these has brought us to the conclusion that the general rule laid down by *Blackston*, 1 *vol.*, 177, "*That the estates must come to one and the same person, in one and the same right*, is subject to exceptions, and that at the common law *merger* might take place in some cases where the two estates are held in different rights.

It is suggested by Mr. Preston, as a rule deduced from the authorities, that "if a husband possessed of a term in right of his wife, purchase the immediate reversion, the term will be annihilated ; for the purchase was the express act of the husband and amounts to a disposition of the term "—(*pages* 295 *m.*, 305 *m.*) While the rule is supposed to be different, where the accession of the freehold to the husband, is by the act of

law and not by the direct act of the party.   These rules are stated with approbation by Chancellor KENT in his *Commentaries, vol.* 4, 101 *m.*, and it may be conceded, that they are supported by many adjudged cases ; but some doubt has been thrown upon them by very high authority.   In *Gage vs. Acton,* 1 *Salkeld,* Lord HOLT said, " if a man hath a term in right of his wife, or as executor, and purchases the reversion, this is no extinguishment, because he hath the term in one right and the reversion in another."   And in 3 *Term Rep.,* 461, Lord KENYON said, " generally, without any distinction, nothing is clearer than that a term taken *alieno jure* is not merged in a reversion acquired *suo jure.*"

We refer also to the opinion of HOBART, C. J., in *Young vs. Bradford, Hob.* 3 ; and to the observations of POLLOCK, C. B., on this subject, in *Jones vs. Davies,* 5 *Hurl & Nor.,* 767, as tending to show that the rules stated by Preston and Kent have not been universally followed.   Conceding, however, that they are correct, and that according to the weight of authority, the purchase of the reversion by Tennison would operate at the common law to merge and extinguish the term ; what was its effect under the laws of Maryland?

The marriage took place, and the purchase of the reversion was made after the passage of the Act of 1853, ch. 245.   That Act by its first section protected the leasehold estate of Mrs. Tennison from the debts of her husband, and declared that it should not in any way be liable for the payment thereof.

The second section provided that " in order to effect the objects of the foregoing section, the wife should have the benefit of all such remedies for her relief and security, as now exist or may be devised in the Courts of law or equity."

That Act came up for construction in the cases of *Schindel vs. Schindel,* 12 *Md.,* 121, 312, in which the contest was between husband and wife as to the right of possession and custody of her property, real and personal, during the coverture ; it was held that the Act did not operate to vest in the wife the sole and separate estate in her property ; but left it

subject to his marital rights, except in so far as it was protected from liability for his debts.

The general language of the Court in that case, with respect to the marital rights of the husband over the wife's property under the Act of 1853, must be understood with reference to the facts and circumstances of the case, and the questions in controversy between the parties. So far as the marital rights of the husband over the property were involved in that case, they were clearly not impaired or affected by the Act of 1853.

Here a different question is presented. Was all the right and estate of Mrs. Tennison in the property extinguished and destroyed by the purchase of the reversion by her husband? Or, in other words, does the doctrine of *merger* apply, notwithstanding the protection to the wife's property created by the Act of 1853?

It seems to us that the application of the doctrine in this case would be against the spirit and intention of the Act, and tend to defeat its purpose and design.

Although the general marital rights of the husband over the property remained unimpaired by the Act of 1853, as was said in *Schindel vs. Schindel*, 12 *Md.*, and in *Weems vs. Weems*, 19 *Md.*, yet in the face of an Act of Assembly, which, for the benefit and protection of the wife's property, exempts it from all liability to the husband's creditors, it cannot be said that his ownership or dominion over it was so complete, that the technical doctrine of *merger* may be applied. If by the purchase of the reversion the whole estate in fee became vested in him in his own right, then it became liable for his debts, and she would be deprived by his act of the protection to her property secured to her by the Statute, and thus the intent of the law would be defeated.

In the deed conveying to Tennison the reversion, there is no expression of any purpose or design to extinguish the term, it is a mere conveyance of the reversion subject to the lease; and in that respect this case differs from *Lawes and Wife vs. Lumpkin*, 18 *Md.*, 334.

KENT says, *vol.* 4, 102 *m*, "*merger* is not favored in equity, and is never allowed, unless for special reasons, and to promote the intention of the party." For which he cites *Lormer vs. Wheelright*, 3 *Sandf. Ch. R.*, 136.

In this case no such intent is disclosed by the deed, or by the acts of the parties; and being of opinion that it would be against equity to allow it to operate in this case, and especially contrary to the intent of the Act of 1853, we conclude that the interest of Mrs. Tennison in the property was not extinguished, but survived to her on the death of her husband; and consequently the only estate in the premises held by her husband at the time of his death, was the reversion therein, or annuity of $45, payable by the lessee, and which has devolved on his surviving son, Francis J. N. Tennison.

The next question is the construction of Wm. H. Tennison's will. After devising to his wife absolutely all his slaves which constituted the largest part of his estate, he proceeds as follows:

"*Item.* I likewise give and devise to my said wife all the rest of my estate so long as she remains my widow; at her death to be equally divided with my children, and to them and their heirs forever."

The testator died in September, 1854, leaving two children, one, named Francis J. N. Tennison, a child of a former marriage, and one, named *William*, the child of his last marriage. William died before the intermarriage of his mother with John T. Clark, which took place August 3d, 1857. Now the question is as to the effect of the marriage of Mrs. Tennison, the widow. The gift of the property is limited to her during her widowhood. It was not denied in the argument that this limitation was effective. Whatever disputes may at one time have existed as to the validity of such a gift, have been set at rest by recent decisions. *Lloyd vs. Lloyd*, 10 *Eng. L. & E. R.*, 140; *Bennett vs. Robinson*, 10 *Watts*, 348; *Commonwealth vs. Stauffer*, 10 *Barr*, 350; *Gough and Wife vs. Manning*, 26 *Md.*, 347.

Clark, *et al. vs.* Tennison, *et al.*

By this will the gift to the wife is during her widowhood, the limitation over to the children is upon her death. What becomes of the property in the intermediate time between her marriage and her death? The will is silent as to that, and the appellants contend there is an intestacy; while the appellees maintain that the will must be read as if the limitation over was to take effect upon the marriage or death of the widow, in order to carry out the intent of the testator, and that the necessary words to effectuate that intention may be supplied.

In support of this proposition the appellees have referred to several cases, in which the Courts have, in the construction of wills, transposed or changed words, or even supplied words omitted in the will, in order to effect the intention of the testator, where that intention is manifest on the face of the will.

It is unnecessary to refer to the cases particularly, because the construction of every will must depend upon its particular language, and very little aid can be derived from the construction which other and different wills have received.

In this case it is apparent on the face of the will that it was drawn by an inexpert and ignorant draftsman.

The plain intent of the testator was that the widow should have the property no longer than during her widowhood. It is equally clear that the limitation over is in favor of the testator's children, who were the primary objects of his bounty, after giving her the preceding estate. He failed to limit it over to them after her marriage, but has limited it to them at her death. To hold that there was an intestacy would defeat this limitation over entirely. It is therefore necessary, in order to carry out the plain intention of the testator, to construe the will as giving the property to the children upon the termination of the estate given to the wife, whether that be by her marriage or her death.

In the case of *Commonwealth vs. Stauffer*, 10 *Barr*, 350, before cited, the provision of the will was very similar, the gift being to the widow during widowhood, and the limita-

Clark, *et al. vs.* Tennison, *et al.*

tion over upon her death; and the Court decided that upon the marriage of the widow the parties in remainder were entitled.

We think we do no violence to this will by adopting a similar construction, and, therefore, hold that there was no intestacy; but that upon the marriage of Mrs. Tennison, the estate devolved upon the children and ought to be distributed accordingly.

As to the several questions presented by the exceptions to the accounts of the guardian and executrix, it is unnecessary for us to go into an examination of them, indeed the record does not afford us the means of doing so. The vouchers and proofs are not before us, and for the same reason we can express no opinion as to the liability of the guardian and executrix, respectively, for interest; the requisite proof not being before us.

Having expressed our opinion upon the main questions, the only ones about which there appears to be any dispute, there can be no difficulty in the Orphans' Court finally disposing of the cases; and to that end, orders will be passed affirming the order of the 17th day of April, 1869, removing the appellant Clark from the guardianship and appointing another guardian in his place. The other orders of the Orphans' Court, from which these appeals were taken, will be reversed, and the cases remanded for further proceedings, each party paying their own costs on these appeals.

*Affirmed in part and reversed in part,*
*and cases remanded.*

(Decided 30th June, 1870.)