(Decided April 1st, 1897.)

## ALEXANDER B. RANDALL AND OTHERS *vs.* J. WIRT RANDALL, TRUSTEE.

*Devise and Legacy—Acceleration of Vesting of Gift in Remainder After a Life Estate—Renunciation of Life Estate by Widow— Termination of Trust Estate.*

When property is devised in trust partly for the testator's widow during life with limitations over upon her death, a renunciation of the provisions of the will by the widow and her election to take her legal share, is treated as equivalent to her death, unless such construction contravenes a clear intention of the testator, and in such case the vesting of the gifts in remainder is accelerated and the trust is terminated.

A testator devised his whole estate in trust, the income to be applied by the trustee to the support of his wife and children during the life of the wife, and directed that when, after her death, all of his children should arrive at age or marry, then the estate should be divided equally between them. The will further provided that if no child or descendant of the testator should be living at the time of the death of his wife, then the estate should be divided among the testator's brothers and sisters and their issue. The widow now living renounced the will and took her legal share of the estate. The testator's children, a son and a daughter, both of them of age, filed a petition asking that the property devised in trust be transferred to them. *Held*, that the renunciation of the widow to take under the will should be treated as equivalent to her death, so as to accelerate the vesting of the shares of the children and to terminate the trust estate, and that they are now entitled to receive their shares from the trustee.

Appeal from an order of the Circuit Court for Anne
Arundel County (REVELL, J.), dismissing a petition filed by
the appellants.

The cause was argued before MCSHERRY, C. J., FOWLER,
BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*J. Southgate Lemmon,* for the appellants.

The two main points in the case are : 1st. Whether the
trustee represents all persons interested.    Judge Jones was
of opinion that the trustee does not represent them, but
Judge Revell, intimating that his own opinion on that ques-
tion is different, says that it is unnecessary to pass upon that
point, and proceeds to construe the will.    2d. Whether
upon the widow's renunciation and receipt of her thirds, the
trust estate ought not to be declared to have come to an
end, and to be now distributable between the testator's two
children.    The question of the termination of the trust will
be considered first, and in doing so, we must examine the
will carefully, bearing in mind the relationship of the pri-
mary beneficiaries, the ages of the children and the condi-
tions surrounding the testator at the time the will was
made.

The ultimate remainder over might indeed be rejected as
surplusage, as it added nothing to the will which the law of
descents and distribution would not have supplied in the
event named, while the Courts always favor a title by de-
scent to one by devise where the construction admits of it.
Be that as it may, the fact that the testator's brothers and
sisters had no place in his will or thoughts as opposed to
the interests of his own children so long as he had a de-
scendant capable of taking, is shown not only in the clause
" fourthly " itself, but in the " lastly " clause, in which the
trustees in aid of his children were authorized to advance to
them all of the property in which the collaterals were given
a contingent interest to the exclusion and destruction of the
ultimate remainder over.    In that clause it is true there was

a reservation of " one-third thereof for the wife," but even that one-third was, it would seem, deliverable to her.   There was certainly no intimation of any purpose of reserving anything of any kind for the benefit of those in remainder, and the absence of any provision of the kind shows conclusively that the testator's collaterals were so little in his mind that he had forgotten them entirely, and revoked all provisions for them before he concluded his not very long will.

The will ends as it begins, with a provision, which gives the entire estate to the testator's widow and children, and so makes manifest the fact that the allusion to the " brothers and sisters," and their issue was in no wise intended as a limitation or check upon the bounty intended for his own descendants, but solely and simply to round out and complete a testamentary disposition, which might in the remote contingency named have presented a seeming neglect in the draughtsman of the paper, if one there was.

Returning to the purpose of the will, it will be seen that throughout the whole there runs a " discretion " in the trustees named by the testator, under which they could apportion and adjust, from time to time, the income to the needs of the different members of the testator's family, and advance portions of the principal itself to those of the children whose maturity or matrimonial situations should call for consideration in that respect.   In no part of the paper does the testator himself apportion the income between his widow and children, and it would seem to have been his wish to provide trustees who could and would take up his own marital and parental duties, and administer his property, as he would have done during his life, so long as it was necessary for the protection of his widow and minor children.   It will be noticed that no provision is anywhere made for the continuance of the trust during the lives of his own children, for one day longer than " when all my children arrive at age or marry, whichever event shall first happen," save and except only so far as his thought for the protection of the widow required.

There was no estate for life in the children, no remainder over to their children, but on the contrary the testator placed evident confidence in his own offspring and meant them to own and control their own property as soon as they possibly could, subject to the protection of his widow. It was for her and the minor children that the discretion was conferred upon the trustees as to the income, while as soon as any child reached age or married there was thought to give him or her, capital in proportion to their share of the estate. Neither of the trustees selected for the delicate duties imposed by the will accepted the trust—Mr. Alex. Randall being dead, and Judge Hagner declining. So far, therefore, as any apportionment of income in any ratio other than that of equality was concerned, the power lapsed, to apportion the same being personal to the trustee (*Druid Park* v. *Oettinger*, 53 Md. 46, 62), while that of advancing upon the fixed basis of numbers and amount remained unused.

The will, however, must be construed in the light of these powers, and the intention of the testator found as originally expressed. Such being the will, the widow renounced the provision in it made for her security and comfort, elected to take her thirds, and discharged the trustee from further care or thought on her account, preferring, it seems, the control of her own means to the trammels of any trust, however well placed or managed. At the time she did this, the lapse of time had cleared the trust of all responsibility for any infant child of the testator, the surviving children being both of age, and now, it may be added both being married.

The trustee, therefore, finds meeting before him the descendants and the collateral heirs of the testator, the former asking for their inheritance, the reason and life of the trust having departed; and the renunciation of the widow having taken her out of the will as completely as if she had died, or had never been mentioned in it. Upon the true construction of the will, it is clear that had death intervened, instead of the renunciation, the rights of the descendants over the collaterals would be clear, and there can be no

doubt that this superiority of right at all times and in all places was intended by the testator. As in *Clark* v. *Tennison*, 33 Md. 93, where the widow's estate was " during widowhood," and the remainder over was at her death, the intent to give the property to the children upon the termination of the wife's estate by remarriage was held clear. The trustee stands discharged by renunciation of the widow, and the maturity of the children, from the obligations of protection accepted by him ; the children have, under the will itself, a right to ask for advancement to the full extent of their respective portions, and there can be no question upon its fair construction that the wish of the 'testator would be gratified by the delivery over, and defeated by the retention of the property now held by the trustee.

While every will must, of course, stand upon its own terms, the general principle involved in this case has been frequently applied and is known as the doctrine of acceleration. The leading case upon the subject is that of *Lainson* v. *Lainson*, 18 Beav. 1, decided by SIR JOHN ROMILLY, Master of the Rolls in 1853, affirmed on appeal, 5 D. M. and G. 754, where it was said : " Although the expression used is that the estate to the son of John Laison is only to take effect from and after John Laison's decease," I am of opinion that the meaning is " from and after the determination of his estate by death *or* otherwise." In the later case of *Craven* v. *Craven*, L. R. 4, Eq. C. 209, before the same Master of the Rolls, he refers to Lainson's case, and says it " established that in a case where a previous life estate was revoked, the next estate in remainder was accelerated." In *Stephenson* v. *Stephenson*, 52 L. Times, 576,578, Lainson's case was approved as of high authority, the opinion applying the principle to the case under consideration by saying : " I think the proper way of reading this will is to read it as if the bequest to the nephews and nieces was entirely stricken out." In 138 Pa. St. 208, *Ferguson's Estate*, the opinion, page 219, says the effect of the widow's renunciation upon all claims under the will is equivalent to

her death ; that this is the general rule, and if there are any exceptions they must depend upon the expression or unavoidable implication of a contrary intent of the testator.

Of course where it is sought, in order to accelerate a particular to ignore an intervening estate, as in *Carrick* v. *Errington,* 2 P. W. 361, the doctrine does not apply, and in some cases, arising under the terms of special wills, its effect has been modified in favor of those standing nearest in blood to the testator as against outside legatees, by the doctrine of compensation. This is illustrated by the case of *Hinkley* v. *House of Refuge,* 40 Md. 461, where this Court, recognizing the general principle involved, page 469, finds that an immediate payment of the legacies would contravene the intention of the testator, and that inasmuch as the next of kin had been damnified by the renunciation of the widow, and the consequent withdrawal of a large portion of the principal of the estate, it was but equitable that they should be compensated, as far as may be, by the appropriation to their use of the benefit renounced by the widow. In other words, as the legatees, appellees in that case, had not, and the beneficiaries nearest in kin to the testator had been injured by the action of the widow, their right to acceleration was denied upon that especial ground.

In the case now under argument, the appellants are nearest to the testator, and they have been disappointed by the action of their mother, and instead of being retarded, the general rule is aided by their equitable claim to compensation. The argument against it would lead a Court of Equity to disregard the general rule, and to continue the trammels of the trust in order that by death or disaster the testator's own children might be disinherited in favor of his nephews or nieces, not because such an intention anywhere appears in the will, but in the face of its expressed desire that the testator's own children should take whenever they reached age. The appellants' construction is further favored by the earlier vesting of the estate. There are numerous

other cases on this rule, but as the above sufficiently illus-
trate the points involved, we append only a few : *Jull* v.
*Jacobs*, 3 Ch. Div. 703 ; *Est. of Vance*, 141 Pa. St. 201 ;
*Holderby* v. *Walker*, 3 Jones Eq. (N. C.) 46 ; *Boyd* v.
*Sachs*, 78 Md. 491, 496.   In short, this peculiar will being
just what it was, Mrs. Randall's renunciation and receipt of
her thirds accelerated the devise and bequest to the children
and ended the trust.

The second question presented is whether the trustee
represents all persons adversely interested, or whether it be
requisite to find, summon or publish for the brothers and
sisters, and the issue of the deceased brothers and sisters
of the testator before the rights of the appellants can be
established ?  The pending controversy is not for the en-
forcement but the destruction of the trust, and if there ever
was a case in which the trustee represented those behind
him, thoroughly and completely, it is here where his con-
trol over and interest in the property rests solely upon the
rights of the so-called absent defendants.   The claim is
adverse to the existence of the trust, and is similar in prin-
ciple and effect to an attack upon its existence, upon the
ground of fraud or collusion, as in *Vetterlein* v. *Barnes*,
124 U. S. 169. See Code, Art. 16, sec. 130. .

No appearance for the appellee.

BRISCOE, J., delivered the opinion of the Court.

Dr. Burton Randall, surgeon of the United States Army,
but residing in Annapolis, died in 1886, leaving a last will
and testament dated in 1877.   At the time of his death he
left a widow, Mrs. Virginia Randall, a son, Alexander B.
Randall, and a daughter, Margaret T., who has since mar-
ried Dr. Joseph M. Worthington.

As the questions for our consideration arise upon a con-
struction of Dr. Randall's will, it will be necessary to set
forth the entire will.   It is as follows : " I give, devise and
bequeath all my estates, real, personal and mixed, to my

brother, Alexander Randall, and my nephew, Alexander B. Hagner, of Annapolis, to be held by them and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, in trust, nevertheless, for the following purposes, to-wit :

" *First*.—To receive, collect and apply the rents, issues and profits of my said estates, in their discretion, to the maintenance and support of my wife and children, and to the education of my children during my wife's life.

" *Second*.—And after my wife's death, to apply the said rents, issues and profits, in their discretion, to the maintenance, support and education of my children, until they respectively arrive at age or marry.

" *Third*.—And when all my said children arrive at age or marry, whichever event shall first happen, then to divide the whole of my estates then remaining among my children equally, and the issue of such among them as may then have died—the issue of such children to take the portion of their deceased parent equally among them.

" *And fourthly*.—In the event of no child or issue of a child of mine living at the death of my wife, then that the said trustee divide my estates then remaining equally among my brothers and sisters then living and the issue of such as may then have died, the issue to take the portion of their deceased parent equally among them ; and

" *Lastly*, in further trust that my said trustees, or the survivor of them, or the heirs, executors, administrators or assigns of such survivor, may at any time they deem it beneficial and proper to sell and dispose of, and by deed convey any part of my said estates, receive the purchase money thereof, and invest the same in any other property for the benefit of this trust estate hereby created, and to constitute a part thereof, subject to all the provisions of this will—or apply such proceeds or any part thereof, for the advancement in life of any of my children after they have obtained age or married, provided such advancement do not exceed the portion such child may be entitled to after deducting the one-third thereof for my wife."

Mrs. Randall, the widow, who is now living, renounced all claim under the will, and elected to take dower and distribution under the law.  The question, then, is whether upon the widow's renunciation and receipt of her thirds, the trust estate ought not to be declared to have come to an end and to be distributed between the testator's two children, both of whom have arrived at age and are married. In other words, whether the devises and bequests in the will to the testator's children are to be paid at once, or are to be delayed to the death of his widow.

On the 21st of July, 1886, a petition was filed in the Circuit Court for Anne Arundel County, by Mrs. Randall and her children, asking for a construction of the will and for a distribution of the trust estate.  This petition was answered by J. Wirt Randall, who had been appointed trustee, in the place of Mr. Alexander Randall and Judge A. B. Hagner, trustees, named in the will.  There was no adjudication of the rights of the parties under the will because of the want of proper parties to the proceedings; the lower Court holding that the brothers and sisters of the testator and their issue should be made parties to the case. On the 19th of November, 1895, an additional petition was filed asking for a distribution of the trust estate, and it is from the order dismissing this petition and the petition filed on the 21st of July, 1886, that this appeal is taken.

It is a well settled rule, that in every case in which a will is to be construed the great object is to ascertain from the face of the paper, the intention and design of the testator ; which is to be carried into effect, unless opposed by some principle of positive law. *Jones* v. *Earle*, 1 Gill, 301.  By a careful examination of the language used in the will and looking to the surrounding circumstances at the time of its execution, we gather the controlling intentions in the mind of the testator.  They are clearly stated by the appellant, and are these : First, that during the life of the wife the estate should be held in trust for the protection of the wife and the minor children.  Second, that after the cessation of

the wife's estate, it should still be held for the protection of the minor children until all were of age or married. Third, that upon the expiration of the estate of the wife and of the minority of the children the trust should cease and the children of the testator should take. Fourth, that the trustees, however, should have a right, if they thought proper, to make at any time during the existence of the trust, even during the life of the wife, an absolute advancement of its portion of the property to any child who should attain age or become married. Fifth, that upon the determination of the wife's estate in the event of there remaining no direct issue of the testator living, that then the property should pass to the testator's brothers and sisters and their issue; in other words, to the testator's heirs at law and next of kin.

What, then, was the effect of Mrs. Randall's renunciation and election to take dower and distribution under the law, upon the interest of the testator's children under the will? The rule followed by both the English and American Courts is, that a widow's renunciation and election to take as against the will is equivalent to her death, unless it contravenes some manifest intention of the testator as expressed by the will. In *Clarke et al* v. *Tennison et al*, 33 Md. 92, where by the will a gift was to the wife during her widowhood, with a limitation over to the children upon her death, it was held, in order to carry out the plain intention of the testator, that the will should be construed as giving the property to the children upon the termination of the estate given to the wife, whether that be by her marriage or her death. In *Ferguson's estate*, 138 Pa. St. 208, the Court in a well considered case, after stating the reasons for the rule, says, that the law must have a settled and uniform rule, and it is that the widow's election to take against the will is equivalent to her death.

Some of the authorities that support this view, are the cases of *Small* v. *Marburg*, 77 Md. 11; *Lainson* v. *Lainson*, 18 Beav. 1; *Craven* v. *Craven*, L. R. 4 Eq. 209; *Jull* v. *Jacobs*, 3 Ch. Div. 703; *Stephenson* v. *Stephenson*, 52 L.

Times (N. S.) 576. In the recent case of *Boyd* v. *Sachs et al.,* 78 Md. 497, where the question upon the construction of a will was somewhat similar to the one here, this Court said: " The widow's marriage was to have the same effect upon all the interests devised and bequeathed by the will as would have been wrought by her death. By the third clause of the will the real estate was given to Daniel, the son, after the widow's death, and by the fourth clause, it was stated that in case of his death, before the widow, it should go to his sisters and their heirs as tenants in common. The plain meaning of these clauses is that Daniel was to take the real estate on the termination of the widow's life estate (by death or marriage), and that if he should die before such termina- iion, it should go to his sisters."

Applying this rule, then, to the will now under consid- eration there can be no doubt as to the correct conclusion that should be reached in this case, and that is, the widow's renunciation and election accelerated the devise and bequest to the testator's children, and terminated the trust. The application of this equitable doctrine, gives effect to the manifest intention of the testator, that upon the expiration of the wife's estate and when his minor children arrived at age or married, whichever event should first happen, then the trust should cease and the whole of his estate be divided among his children equally. It therefore follows from what we have said, that the orders appealed from must be re- versed and the cause remanded, in order that a decree may be passed in accordance with this opinion, the costs to be paid out of the trust estate.

*Orders reversed and cause remanded.*
*Costs to be paid out of trust estate.*

(Decided April 1st, 1897.)